# VIOLA L. WILLIAMS v. KANSAS CITY TERMINAL RAILWAY COMPANY and CHICAGO, BURLINGTON and QUINCY RAILROAD COMPANY, Appellants.

### In Banc, May 24, 1921.

1. **TRANSFER FROM COURT OF APPEALS: Jurisdiction of Supreme Court.** When a case is transferred to the Supreme Court by a Court of Appeals on the ground, within the time and in the manner specified by the Constitution, the Supreme Court acquires jurisdiction to hear and determine the cause, just as if it had come direct to it by appeal from the trial court.

2. ———: ———: **Defective Abstract of Record in Court of Appeals: New Abstract in Supreme Court.** Where the Court of Appeals (one judge dissenting) held appellant's abstract of record failed to show that the bill of exceptions was properly authenticated and therefore affirmed the judgment and certified the cause to the Supreme Court on the ground of conflict of opinion, the appellants had the right to file in the Supreme Court, in due time, an abstract of record which eliminated the question considered by the Court of Appeals.

3. **NEGLIGENCE: Passenger Carrier: Degree of Care as to Station Premises: Instruction.** In a suit by a passenger against two railroad companies for damages for personal injuries received by the passenger by falling on wet and slippery steps leading from the waiting room in the Union Station at Kansas City to the platform on the train level where passengers boarded the train, an instruction is erroneous which tells the jury that the defendants owed plaintiff "the highest practicable degree of care of a very prudent person engaged in like business to prevent injury to her while upon their premises," inasmuch as defendants owed plaintiff no higher duty than that of exercising ordinary care to maintain the steps in a reasonably safe condition.

4. ———: ———: ———: **Steps with Standard Treads: Demurrer to Evidence.** Where defendant railroad companies had equipped the steps leading from the station waiting room to the platforms on the train level, where passengers boarded the train, with standard safety treads; consisting of corrugated steel and lead plates covering the entire surface of the steps, the ridges of the plates extending lengthwise paralleling the steps and consisting of steel

channels filled with lead, the lead coming up to or a little above the sides of the channels, they had done all that the exercise of ordinary care required to make the steps reasonably safe from the danger of slipping upon them, there being no evidence that the slipperiness complained of in the petition arose from the material of which the steps were constructed, or from the manner of their construction or from their having become worn or out of repair, but tending rather to show that it was due to water from the wet feet, clothing and umbrellas of passengers who preceded plaintiff down the steps to the train. And under such circumstances plaintiff was not entitled to recover and the trial court erred in not sustaining a demurrer to the evidence. [JAMES T. BLAIR, J., dissenting.]

Transferred from Kansas City Court of Appeals.

REVERSED.

*Warner, Dean, Langworthy, Thomson & Williams, S. W. Sawyer* and *John H. Lathrop* for appellants.

(1) Whether or not the abstract of the bill of exceptions filed in the Court of Appeals was sufficient, is no longer a question in the case because a new abstract has been filed in this court eliminating all possible deficiencies. (a) The majority opinion of the Court of Appeals deemed the abstract of the bill of exceptions insufficient because the judge's signature was not printed at the end of the bill of exceptions. As the case was certified here, it comes as if on appeal direct from the Circuit Court. Hayes v. Sheffield Ice Co., 221 S. W. 705; Art. 6, sec. 6, Const.; Keller v. Summers, 262 Mo. 331; Epstein v. Railroad, 250 Mo. 7. (2) The plaintiff failed to make out a case and the judgment should be reversed. (a) The defendants owed the plaintiff only the duty of ordinary care in respect to the condition of the station premises. Gunderman v. Ry. Co., 58 Mo. App. 370; Fullerton v. Fordyce, 121 Mo. 1; Robertson v. Wabash Railroad, 152 Mo. 382; Chase v. Railroad, 134 Mo. App. 655; Joyce v. Railway, 219 Mo. 344; Davis v. Railroad Co., 127 N. E. 66. (b) It was incumbent upon plaintiff to

show not only that a condition existed which might reasonably be expected to cause an injury but that such condition was actually known to the defendants and they had had an opportunity to correct it, or had existed for such a length of time that the defendants could have known of it by the exercise of ordinary care and corrected it or had existed for such a length of time that the defendants were presumed to know it and that they had failed to correct it within a reasonable time. Abbott v. Mining Co., 112 Mo. App. 550; Clonts v. Gas light Co., 144 Mo. App. 582; Kelley v. Ry. Co., 105 Mo. App. 365; Schnatterer v. Bamberger, 79 Atl. 324; Toland v. Furniture Co., 56 N. E. 608; Reeves v. Fourteenth Street Store, 96 N. Y. 488; Norton v. Hudner, 100 N. E. 546; Dudley v. Abraham, 107 N. Y. S. 97; Goddard v. Ry. Co., 60 N. E. 486; DeVelin v. Swanson, 72 Atl. 388; Davis v. Railroad Co., 127 N. E. 66. (3) There was plain error in the instructions given by the court on behalf of the plaintiff and refusing instructions asked by the defendants so that the case must be at least reversed and remanded. See all authorities cited under point 1. Cluett v. Power Co., 220 S. W. 865; Peck v. Amusement Co., 195 S. W. 1033.

*John T. Mathis* and *McVey & Freet* for respondent.

(1) The plaintiff made a case entitling her to the verdict of the jury, as the defendants were negligent in maintaining the steps leading to the train in a muddy, wet condition, which caused plaintiff to fall, when they knew or by the exercise of care could have known of the condition in time to have remedied it prior to plaintiff's injury, and regardless of the knowledge of defendants, plaintiff is entitled to recover because she was a passenger, and the defendants owed her the duty to have the steps in a safe condition. Albin v. Ry. Co., 103 Mo. App. 316; Bledsoe v. West, 186 Mo. App. 465; Rodick v. Ry. Co., 109 Me. 530, 85 Atl. 42. (2) The plaintiff

was a passenger under the care and control of defendants, and as such was entitled to the highest practicable degree of care from defendants, and the court was right in so instructing the jury. Stauffer v. Railroad, 243 Mo. 327; Austin v. Railroad, 149 Mo. App. 397; Albin v. Railroad, 103 Mo. App. 308; Young v. Ry. Co., 93 Mo. App. 273; McClanahan v. Railroad, 147 Mo. App. 404; Dieckman v. Ry. Co., 145 Iowa, 250, 121 N. W. 676; Ry. Co. v. Harrison, 56 Tex. Civ. App. 17, 120 S. W. 254.

RAGLAND, C.—Plaintiff sues to recover for injuries received from a fall on a stairway leading from the waiting room, in the Union Station at Kansas City, down to a platform from which passengers enter trains.

Plaintiff was at the time a passenger and was on her way to a train. Her action is based on the alleged Statement. negligence of defendants in permitting the stairway at the time to be in an unsafe and dangerous condition. The petition charges the negligence in the following language:

"By reason of the negligence and carelessness of said defendants, their agents and servants, in maintaining said steps and stairway . . . in a slippery, dangerous and defective condition, plaintiff slipped on said steps and stairway and fell against the banister and steps of said stairway, thereby injuring said plaintiff as more particularly set out herein; that said defendants by the exercise of ordinary care knew or could have known of the dangerous and slippery condition of said steps."

One of the defendants answered with a general denial and a plea of contributory negligence; the other, with a general denial only.

From express and implied admissions, the following facts appeared on the trial: The Union Station at Kansas City is so constructed that there are no entrances from the street on the track level. The only way for passengers to get to the trains is to come into

the station from the street, pass through a large lobby, thence into the main waiting room and from thence down one of a number of stairways leading to the platforms on the train level. From the street entrance into the station to the place where plaintiff fell is from 300 to 400 feet. The stairways are not in continuous use; each serves as a means of ingress and egress only for passengers going to and coming from certain trains; hence, as to any one of them, there may be long intervals of non-use. They are so enclosed as not to be exposed to the weather; and the train platforms are also under roof. The stairway on which plaintiff fell was constructed of concrete and iron. There were two landings; the flight from the second one to the bottom was fourteen steps. The width of the stairway was not shown, nor were the dimensions of the steps. It appears, however, that there was a banister on each side and the steps were equipped with a safety tread. The tread was a corrugated steel and lead plate which covered the entire surface of the step. The ridges, which extended lengthwise the plate paralleling the steps, consisted of steel channels filled with lead, the lead coming up to or a little above the sides of the channels. The lead, it was said, had an adhesive quality which is not affected by the lead becoming wet.

According to plaintiff's testimony: She went to the Union Station in the afternoon of December 31, 1916, to take a Burlington train for Palmyra, Missouri, due to leave at 6:20 p. m. She procured a ticket, went to the waiting room, sat down and waited for the gate to be opened. There was a crowd at the gate through which she would have to pass to go to her train. After about five minutes the gate was opened and the crowd began to go through. When she got to the gate an usher took her suit case and told her to follow him. She was carrying a baby, an umbrella and a handbag. As she was starting down the last flight of steps her right foot slipped. Just as she put her weight on her right foot,

in taking a step, it slipped sideways to the left along and parallel with the step. In trying to regain her equilibrium, she caught her left foot pulling the heel off of the shoe and fell, on her back and side, about four steps. The fall caused her painful injuries. The step on which her foot slipped was wet, practically all of the steps were wet. In her language: "They were wet, and you could see the tracks of people, mud tracks I think, you could see the tracks plain, and they were wet." It was a drizzly, rainy day—had been raining all day.

Her own testimony was all the evidence offered by plaintiff with reference to the condition of the steps. For defendants the station master and his assistant both testified that the steps were neither wet nor muddy.

At the close of the plaintiff's case in chief and again when all the evidence was in, each of the defendants asked a peremptory instruction directing a verdict in its behalf. These were refused. At the instance of the plaintiff the jury were instructed that if they found that the steps on which plaintiff slipped was wet and slippery and thereby rendered unsafe for persons walking thereon; that such condition caused plaintiff to fall and sustain injury; and that defendants knew of said condition, or by the exercise of a high degree of care could have known of the same, in time to have removed it and made the step safe before plaintiff fell, they should return a verdict for her. They were further instructed, in fact, that plaintiff was a passenger and that the defendants owed passengers the highest practicable degree of care of a very prudent person engaged in like business to prevent injury to such passengers while upon the premises and under the care of defendants.

The jury found for plaintiff, assessing her damages at $400, and judgment was rendered accordingly. Defendants appealed to the Kansas City Court of Appeals. The decision of that court on the appeal was deemed by one of the judges to be in conflict with decisions of this court and the cause was transferred herein conformity with the constitutional mandate.

That the trial court should have directed a verdict in their favor is the principal contention of appellants.

I. The judges of the Court of Appeals disagreed as to whether what purported to be the ·bill of exceptions in appellants' abstract of the record, filed in that court, was properly authenticated. The majority opinion held that it was not, and on the record proper affirmed the judgment of the trial court. After the cause was transferred, appellants in due time filed in this court an abstract of the record which wholly eliminates the question that vexed the members of the Court of Appeals. Our ruling on the questions presented by the record now before us can have no bearing upon the conflict of decision, thought to have arisen, which was the basis of the order transferring the case. Our jurisdiction, however, is not dependent upon the existence of a conflict of decision. The certification by the Court of Appeals, on the ground, within the time and in the manner specified by the Constitution, confers upon us the jurisdiction to hear and determine the cause, just as if it had come to us by appeal from the *nisi prius* court. And appellants were within their rights in filing an abstract of the record here, just as though the case had reached our docket "by ordinary appellate process." [Epstein v. Railroad, 250 Mo. 1, 16; Bussiere's Admr. v. Sayman, 257 Mo. 303, 307; Hayes v. Sheffield Ice Co., 282 Mo. 446.]

*Transfer from Court of Appeals: Jurisdiction of Supreme Court.*

II. Neither appellant suggests that, if it be held that there was negligence as charged in the petition, it is any less culpable than its codefendant. They make a common defense. We shall accordingly consider the question of their liability as though each owed the plaintiff the same duty with respect to the maintenance of the stairway on which she fell.

To determine whether defendants were negligent as charged, it is necessary to consider: first, what the duty

was that they owed the plaintiff with reference to the stairway in question; and second, whether they failed to perform that duty.

(1) At the time she received the injury of which she complains, plaintiff was a passenger and as such under the care and protection of the defendants. The trial court held, and so instructed the jury, that the defendants owed her the highest practicable degree of care of a very prudent person engaged in like business to prevent injury to her while upon their premises. We think the court was in error. The degree of care bound to be exercised by carriers, as well as by all other persons, is one commensurate with the dangers incident to the enterprise in which they are engaged. Accordingly, a high standard of care is required of the carrier as to passengers during the course of their transportation and when they are entering or leaving the vehicle of carriage. This is so because the safety and lives of the passengers rest entirely in the carrier's hands, the passengers having no control whatever over the dangerous instrumentalities employed in their transportation. But there is no reason why the carrier, generally speaking, should be held to a higher degree of care in maintaining its station buildings than that to which the owner of buildings used for ordinary business purposes is held. Station buildings in themselves neither require the employment of dangerous agencies nor possess unusual elements of danger. Persons using the stairway in question could not by any chance have come into contact with the dangerous instrumentalities made use of by defendants in their business as carriers; such persons were not subject to any greater danger than is commonly encountered in going down the steps of the ordinary public building. There can be no valid reason, therefore, for holding that the defendants owed plaintiff any higher duty than that of

*Margin note: Negligence: Passenger Carrier: Station Premises: Degree of Care.*

exercising ordinary care to maintain the steps in a reasonably safe condition. [Joyce v. Railroad, 219 Mo. 344, 372; 4 Elliott on Railroads (2 Ed.) sec. 1590.]

(2) The petition alleges that the step on which plaintiff fell was unsafe because it was "slippery." She offered no evidence tending to show that the slipperiness arose from the material of which the step was constructed, or from the manner in which it was constructed, or from its having become worn or out of repair. All the evidence she introduced as to the condition of the step was her testimony that the step was wet, that she could see the tracks of people—mud tracks she thought but she could see them plainly, and they were wet. The question submitted to the jury, at her instance, with reference to the step, was whether it was "wet and slippery." It is not her contention that she stepped on a piece of mud and slipped, but that she slipped because the step was wet.

—: —:
—: Wet
Steps: Standard Treads.

There was no direct evidence as to what caused the step to be wet or as to whether defendants, had any knowledge of such condition prior to plaintiff's fall. And no evidence at all as to how long the step had been wet. The stairway was enclosed and under roof, hence not exposed to the weather. However, it had been raining all day, and the inference is that the water on the step came from the wet foot wear and dripping rain-coats and umbrellas of persons who had gone down the stairway before the plaintiff. If the steps became wet in this manner, they must have done so many times before under like circumstances, and their condition at the time of plaintiff's fall, must, therefore, reasonably have been anticipated by defendants' agents. But even so, what is it that it was incumbent upon them to do? Respondent's counsel suggest that they should have used a mop or sand. Had plaintiff been the first to go down the steps after the gate was opened, she would no doubt have found them dry, but at least a part of the crowd im-

mediately preceded her. The only way defendants could have made the steps dry by the use of mops, for all of their passengers, would have been to have admitted but one at a time through the gate and then followed him all the way down, mopping the steps after him. The use of sand would have made the stairway unsightly and it is not at all certain that it would have been any more efficacious in preventing plaintiff from slipping than the safety tread. But whether it would or not is not decisive of the question under consideration. Defendants were not insurers against all hazard arising from the use of the steps; they were not bound to make them absolutely safe. By equipping them with a safety tread of standard construction, defendant did all, under the circumstances shown by the evidence, that the exercise of ordinary care required, in order to make the steps reasonably safe from the danger of slipping upon them. We hold as a matter of law that plaintiff failed to make a case entitling her to go to the jury.

The judgment of the trial court is reversed. *Small, C.,* concurs; *Brown, C.,* not sitting.

PER CURIAM:—The foregoing opinion of RAGLAND, C., is adopted by Court in Banc. All concur except *James T. Blair, J.,* who dissents because he thinks the cause should be remanded.