LILLIAN L. SCHMOLL v. NATIONAL SHIRT SHOPS OF MISSOURI, a Corporation.—No. 39594.—193 S. W. (2d) 605.

Division One, March 11, 1946.

Rehearing Denied, April 8, 1946.

*Lashly, Lashly, Miller & Clifford* and *Oliver J. Miller* for appellant.

*Mark D. Eagleton* and *Wm. H. Allen* for respondent.

VAN OSDOL, C.—Action for personal injury sustained, by plaintiff in falling in the entrance lobby of defendant's store. A jury awarded $15,000 damages to plaintiff, and defendant has, appealed from the ensuing judgment.

It was alleged in plaintiff's petition that she, a prospective customer at defendant's store, stepped into the lobby entranceway provided by defendant, and was caused to slip and fall by the negligently unsafe condition of the lobby floor; the floor was of "terrazzo with brass division bars in it"; there was lettering of a metallic substance embedded in the floor; the metal letters were polished down to a very slick and slippery surface; the entire floor of the entrance lobby, when wet, was slippery, unsafe and dangerous; and defendant failed to remedy the condition or to warn the plaintiff of the danger. It was further alleged that the defendant had theretofore undertaken to alleviate the dangerous condition by covering a portion of the floor with a rubber matting, and that defendant had failed to put the rubber matting in place, although rain had fallen for a considerable period of time and the floor was wet, at the time of plaintiff's injury.

1168

Defendant pleaded the general issue, and contributory negligence of plaintiff in failing to observe her surroundings and to "maintain her balance and equilibrium."

Defendant's store fronts the south side of Olive Street, a few doors west of Seventh Street, in the City of St. Louis. The open lobby entrance to the store is eight feet, three and one-half inches in width, and is nine feet long; "there is a slight incline upward" in the lobby floor. The lobby is flanked (east and west sides, and south end) by show windows, except $43\frac{1}{2}$ inches of the south end where a passageway $33\frac{1}{2}$ inches long approaches the store door. The distances from the passageway to the southwest and southeast corners of the lobby are respectively $36\frac{1}{4}$ inches and 20 inches. The entire floor is paved with "terrazzo," a kind of flooring made of small chips of marble set irregularly in cement and polished. (Terrazzo has been used a great many years in forming surfaces of floors.) Brass strips about an eighth of an inch wide, separating the colors of the vari-colored pattern of the floor, are embedded in the terrazzo and are useful in preventing the flooring from cracking when expanded or contracted by heat or cold. Words in brass lettering, "NATIONAL SHIRT SHOPS," are also embedded in the terrazzo. The word "NATIONAL" is (nearer the store door) south of the words "SHIRT SHOPS." The base of the lettering is toward the street and the base of the words "SHIRT SHOPS" is about 17 inches from the juncture of the lobby floor with the sidewalk. Each letter is $5\frac{3}{4}$ inches long and the letters vary in width, the letter "N" being $3\frac{3}{4}$ inches wide, and the letter "A" approximately 6 inches in width. The metal lines forming the letters are three quarters of an inch wide. Between the words "SHIRT SHOPS" and the north end, and close to the north end, of the lobby floor are words (in brass), "Coast To Coast," of smaller sized letters. The entire lettering is spaced in the east approximate two thirds of the front of the lobby floor. Wear has highly polished the surface of the brass; by taking a "straight edge little rule" and placing it on top of a letter, it was found that "it could be rocked up and down, showing the terrazzo . . . had worn down below the surface of the top of the letters"—this, a witness was not able to see with the naked eye, in other words, "standing up you couldn't see that difference." Looking down on the letters, "they present a very highly polished surface"; they are "slippery when they are wet"; relatively, the surface of the letters is more slippery than the surrounding terrazzo—this cannot be seen by one in a standing position. Terrazzo is a common surfacing of floors of lobbies of stores, and brass is used more than some of the other metals for expansion joints in terrazzo flooring, because brass is a "nice looking" metal; its abrasive qualities are "somewhat close" to those of terrazzo; and brass "will weather and won't rust." Brass letters do not aid in the construction or maintenance of the floor, but it is not uncommon to embed brass

lettering or designs indicating a store's name or a trademark or trade name in the terrazzo flooring of lobbies, entranceways, and vestibules of stores. Brass is also "quite often" used in hinge and threshold plates of "storeways." It was pointed out by a witness for plaintiff that many threshold plates of brass have corrugations, one half or three quarters of an inch apart, running parallel with the length of the plates. The corrugations have a tendency to be "non-slip." In our case, a shoe slipping parallel with the length, five and three-quarters inches, of a letter "A" in the word "NATIONAL" would not encounter such a corrugation, or other abrasive.

Plaintiff, at about 11:30 in the morning of September 8, 1942, alighted from a bus at the southeast corner of the intersection of Seventh and Olive Streets and proceeded westwardly across Seventh Street, thence along the south sidewalk of Olive Street, passing the windows of defendant's store. She saw an article she "was looking for" on display in the show window west of the store door, and took one step into the open lobby intending to enter the store and purchase the desired article. She had never been in the store before. There was no rubber matting on the lobby floor. It had been raining when plaintiff left her home, ▓▓▓▓ and was still raining at the time she reached defendant's store; her shoes had rubber Cuban heels and were wet. She stood momentarily, closing her umbrella. "It was wet all around where I was standing." The floor did not "look slick or slippery." She noticed there was a slight upward incline of the lobby floor. She saw the brass letters in the floor, the word "NATIONAL" being in front of her. She then took another step with her right foot, stepping on one of the brass letters (the second "A" of "NATIONAL"); her foot slipped—she fell backwards and struck her left elbow very hard on the floor, sustaining serious injury. She was assisted into defendant's store and, while she was there, defendant's porter put a rubber matting on the lobby floor covering the "biggest part" of the word "NATIONAL." It was the testimony of plaintiff's husband that he examined the lobby floor at the place his wife had told him she had fallen. It did not look slippery, "but I felt of it and it felt slippery, and when I put my heel on it to see if it was slippery, I could tell it was slippery." Plaintiff's husband had been by defendant's store on other days, for a number of previous years; on those occasions, when it was raining, he had noticed "they had a mat out there . . ."

Defendant (appellant) contends the trial court erred in overruling defendant's motion for a directed verdict.

Defendant urges there was not that quantum of substantial evidence of negligence of defendant to justify the submission of plaintiff's case; and that whatever danger existed was obvious and further warning was unnecessary. Plaintiff (respondent), on the other hand, urges that—since the evidence tends to show the large brass lettering

contained no abrasive substance; was not corrugated; was higher than the surrounding surface; had become highly polished, smooth and slick through the years, and was dangerous, particularly when wet; and defendant, having recognized such condition and having customarily covered the lettering with a rubber matting in rainy weather, but on the occasion of plaintiff's injury the lettering, though wet, was not so covered—the question of defendant's liability was for the jury; especially so, since the dangerously slick condition of the lettering was not apparent, and plaintiff, although she looked, had no knowledge or appreciation of the danger.

Defendant, occupant of a building and proprietor of a store, owed plaintiff, a business invitee, the duty to exercise ordinary care to have its premises in a reasonably safe condition. Defendant was not the insurer of the safety of plaintiff. Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S. W. 2d 723; Cameron v. Small, Mo. Sup., 182 S. W. 2d 565. The evidence shows terrazzo is commonly used as a flooring in lobbies of stores, and the use of brass in providing expansion joints is likewise common in the construction of terrazzo flooring; it has not been considered that terrazzo (with brass expansion joints) as a flooring is inherently dangerous; and defendant is not to be held negligent merely because of the use of terrazzo with brass expansion joints in the construction of the lobby floor. Cameron v. Small, supra. It is also seen from the evidence that the use of brass in embedded designs or lettering indicating a trade name or mark, or a name of a store is not uncommon in the terrazzo floors of entrance lobbies of stores; however, brass becomes smooth and highly polished by wear, and, when so, is slippery when wet. Yet, defendant may not be necessarily subjected to liability because the brass so used was slippery and though the plaintiff's fall was occasioned by the dangerously slippery condition of the brass. There is no liability of defendant for injuries from dangers that are obvious, or as well known to plaintiff as to defendant. Paubel v. Hitz, 339 Mo. 274, 96 S. W. 2d 369; Vogt v. Wurmb, supra; 20 R. C. L. 56, sec. 52. Whatever danger inhered in the brass lettering was due to the fact that the brass was smooth and highly polished, and to the fact that the lettering was wet. But it was shown in evidence that, looking at the brass letters, "they present a very highly polished surface"; it could be plainly seen that there were no corrugations in the brass lettering; and, at the time plaintiff sustained her injury, she knew the highly polished surface of the brass was wet. The highly polished surface of the brass embedded in the "slight incline upward" of the lobby floor was unlike the more steeply inclined ramp of concrete (worn smooth and, so, slippery when wet), which smoothly worn surface blended into the background of the ordinarily abrasive concrete; nor, was the danger in proximity to a screen door or other obstruction

through which an approaching invitee could get but an imperfect view of the slippery floor, as in the case of Cameron v. Small, supra, cited by plaintiff. And plaintiff has cited other cases in which the construction or maintenance of unsafe installations were held to be actionable negligence; however (as in the Cameron case), such unsafe conditions of the installations were not obvious, or, though known to defendant, were not known to plaintiff. See State ex rel. Elliott's Department Store Co. v. Haid, 330 Mo. 959, 51 S. W. 2d 1015; State ex rel. First Nat. Bank in St. Louis v. Hughes, 346 Mo. 938, 144 S. W. 2d 84 (Bankhead v. First Nat. Bank in St. Louis, Mo. App., 137 S. W. 2d 594); Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S. W. 2d 390; Hubenschmidt v. S. S. Kresge Co., Mo. App. 115 S. W. 2d 211. In our case, on an invitee's approach, the lettering of smooth, highly polished brass was plainly disclosed. The lettering was embedded in such a position in the lobby floor that it would ordinarily be seen; in fact, the lettering was obviously put in such a position with the purpose that it would be seen, and was seen by plaintiff; and by her seen to be wet. Plaintiff had as much knowledge of the condition of the brass lettering as had defendant.

It is commonly known that a smooth, highly polished surface is slippery when wet. Under the circumstances, a person of ordinary prudence would have appreciated the slippery condition of the wet brass lettering so patently disclosed; although plaintiff did not, according to the evidence. In this connection, we are treating more directly with the legal duty or basis of liability of defendant than with a question of contributory negligence. Defendant, who was not subject to liability for injuries resulting from dangers that were obvious, should not be obliged to anticipate that its patrons, in the exercise of ordinary care, would fail to appreciate dangers generally known to be inherent in conditions that were obvious.

 But, it is urged, the unevenness of the lobby floor, due to the wearing of the terrazzo around the brass lettering, was such a defect in the floor as to evidence the failure of defendant to exercise ordinary care in maintaining a reasonably safe floor. It is not contended by plaintiff that her fall was occasioned by the worn condition of the terrazzo; but the unevenness of the floor (due to the worn terrazzo) in proximity to and in connection with the slippery brass lettering is urged as a negligently unsafe condition of the floor. As we have said, the wet brass lettering (on which plaintiff stepped and slipped) would ordinarily be and was seen. Plaintiff's witness, in testifying of the unever condition of the floor had to use a "straight edge little rule" in order to determine there was a difference in the level of the brass and the surrounding terrazzo; "standing up you couldn't see that difference." Floors are not usually perfectly level and are not infrequently worn. It appears to us to be unreasonable that such a negligible fault as the shown slight unevenness of the

floor should be held to be the basis of liability. Defendant was not required to have its premises absolutely safe—defendant was not an insurer of its patrons' safety. Ilgenfritz v. Missouri Power & Light Co., supra; Mullen v. Sensenbrenner Mercantile Co., Mo. Sup., 260 S. W. 982.

Of the evidence that defendant had on other occasions when it was raining, through a number of years, placed a rubber matting on the lobby floor; and had put out the matting after plaintiff had fallen—it was not shown that plaintiff in approaching defendant's store had known of or relied upon a custom or habit of defendant to cover the floor with a rubber matting when the brass was slippery. Since it was not shown that the floor was not reasonably safe, except in the respect that its unsafe condition was obvious, we hold the use of the matting on former occasions, when the floor was wet, should not be considered such an admission of a negligently unsafe condition of the floor as to justify the submission of the issue to the jury. To hold otherwise would be but to penalize defendant for an extra precaution for the safety or convenience of its patrons.

The judgment should be reversed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.