Isabelle **WILBURN**, Plaintiff-Appellant,

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Defendant-Respondent.**

No. 31703.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1964.

Thurman, Nixon & Smith, Hillsboro, for plaintiff-appellant.

Dearing, Richeson, Weier & Roberts, Hillsboro, John Mohler and Leo E. Eickhoff, Jr., St. Louis, for defendant-respondent.

DOERNER, Commissioner.

This is an action for damages for personal injuries alleged to have been sustained when plaintiff slipped and fell on the floor of defendant's office in DeSoto. The jury returned a verdict in favor of plaintiff for $10,000 and judgment in conformity therewith was entered. Thereafter, the court sustained defendant's motion for judgment in accordance with its motion for a directed verdict on the grounds that there was not sufficient competent evidence in the record to make a submissible case or support a verdict for plaintiff, and also ruled that if it should be held on appeal that plaintiff made a submissible case, then defendant's alternative motion for a new trial should stand sustained because of certain specified errors. Plaintiff's appeal followed.

In her amended petition plaintiff alleged that on January 20, 1961, while in the defendant's building as a business invitee, and while walking on the floor thereof, she was caused to slip and to fall, and to be injured, as a direct and proximate result of the negligence and carelessness of the defendant. While plaintiff's petition contained various specifications of negligence, plaintiff's sole submission was on the theory that the floor had become dangerous and not reasonably safe by reason of becoming " * * * moist or wet with water or a liquid slippery substance * * *" and defendant's failure to remove the same or to warn plaintiff of the presence and danger thereof.

■ Plaintiff maintains that the court erred in sustaining defendant's motion for judgment since the evidence made a submissible case, and that the court also erred in its alternative ruling granting defendant a new trial. In view of the first issue we must review the evidence in some detail, from a standpoint favorable to plaintiff, giving her the benefit of any part of defendant's evidence not contradicted by her own testimony or contrary to her theory of recovery, and allowing her the benefit of all favorable inferences arising therefrom. Quigley v. Sneed, Mo., 367 S.W.2d 637.

Plaintiff, 58 years of age, 5 feet 3 inches in height and 260 pounds in weight, was employed as cook in a restaurant named the Salad Bowl, in DeSoto. After getting off work about 3:00 P.M. on January 20, 1961, she went directly to defendant's building, about four blocks from the restaurant, to pay her telephone bill. Her route took her three blocks southwardly down Main Street, and about a half block up Pratt, to defendant's building. It was a rainy, snowy day, and snow was falling at the time. There had been snow on the ground since 10:00 A.M. and by 3:00 P.M. the snow was two to three inches deep. However, plaintiff testified that the snow had been shoveled off of the sidewalks on Main Street and that she walked where it had been shoveled. When she arrived at her destination she wiped her feet on a rubber mat which was free of snow, outside the defendant's building. She then went through a vestibule and into the business office, and walked a distance of about 14 feet or a little less directly to the desk of Mrs. DaPron, one of defendant's service representatives, where she waited approximately five minutes while another customer, Mrs. Sloan, paid her bill and left the office. Plaintiff paid her own bill and turned to leave. After taking just a few steps and traveling about five feet towards the same door by which she had entered her feet went " * * * out from under * * *" her quickly, and she fell on her right side. She tried to get up by putting her hand down on the floor, and " * * * my hand felt damp, it felt like water." Mrs. DaPron assisted her to her feet and she sat in a chair approximately 15 minutes before leaving the office.

Defendant's office, relatively new, had been open for several months, and plaintiff

testified she had paid her telephone bill there regularly each month. She was familiar with the layout of the office, knew what it looked like, and on her prior visits had never noticed anything out of the ordinary about the floor. She stated that it was level and surfaced with "tile" which was about the size and something like the tile on the floor of the courtroom, and of about the same degree of slickness. (The record indicates that in using the word "tile" the witnesses were not referring to marble or vitreous tile, but to rubber or asphalt tile.) Cross-examined as to whether she had been looking at the floor on the day she fell she first replied, "I don't know that I was" but when pressed further conceded, "Well, I guess I did." She admitted that she did not notice anything slick or out of the ordinary about the floor as she walked to the desk to pay her bill, but said that the place where she fell, " * * * seemed slicker." However, she didn't know how much slicker. Asked whether a matter of approximately three feet or four of the tiles would cover about the width of her paths going in and coming out, she answered "I imagine." Plaintiff admitted that at the time she fell she was wearing shoes with corrugated soles, which meant that there were diagonal indentations on the bottom of the soles that were as wide "I imagine about like a pencil." Asked whether snow had accumulated on the soles she responded, "I may have some." To the questions of whether she got all of the snow out of the indentations when she wiped her feet, and of whether any snow on her shoes melted during the time she waited as Mrs. Sloan paid her bill she answered "I don't know" to both inquiries. As to the amount of water on the floor she testified on cross-examination:

"Q. Now, about this dampness that you say that you felt on your hand when you placed your hand down on the floor to rise up after your fall, there wasn't any puddle of water there on the floor, was there?

"A. Not that I noticed.

* * * * * *

"Q. Mrs. Wilburn, what I'm trying to get you to tell me, there wasn't any puddle of water there on the floor, was there?

"A. No.

"Q. There wasn't enough to wet your clothing or anything like that?

"A. My clothes was damp.

"Q. And you just felt a trace of moisture on your hand when you put it down there to raise yourself up?

"A. And my coat."

The only custodial employee in defendant's office was a Mrs. Scott, who worked from 6:00 to 8:00 A.M. and from 11:00 A.M. to 1:00 or 1:30 P.M. During the first period she cleaned the business office, entrance hall, and outside of the door of the vestibule. In cleaning the floor of the office on business days she used a dust mop to dry mop the floor. Her noontime work consisted of cleaning the plant department, where the facilities were located. Over the weekends, when no one was around, she used an ordinary wet mop on all the floors. Mrs. Scott testified that she had never missed a day's work and that she regularly inspected the business office every day around one o'clock; that if she found any unusual substance on, or condition of, the floor she cleaned it up; and that the wet mop was available to wipe up any mud or water that might be tracked in. Mrs. Scott was unable to remember whether she wiped up the business office on January 20, 1961, at any time after 8:00 A.M. Mrs. DaPron stated that as far as she knew the floor had not been cleaned after 8:00 A.M. on the day plaintiff fell. Both she and Mrs. DaPron stated that ordinarily many people came in and went out of the office.

█ █ As the court said in Dean v. Safeway Stores, Inc., Mo., 300 S.W.2d 431, 432 and reaffirmed in Wilkins v. Allied Stores of Mo., Mo., 308 S.W.2d 623, 628, the rule governing cases of this character, as de-

clared and set forth in the Restatement of the Law of Torts, is firmly embedded in the jurisprudence of this jurisdiction. That rule is stated in 2 Restatement, Torts, Sec. 343 as follows:

> "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he
>
> "(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and
>
> "(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and
>
> "(c) invites or permits them to enter or remain upon the land without exercising reasonable care
>
> "(i) to make the condition reasonably safe, or
>
> "(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

Fundamentally, the basis of a proprietor's liability in a case of this nature is his superior knowledge of the defective condition of his premises which results in injury to his business invitee. Gruetzemacher v. Billings, Mo., 348 S.W.2d 952; Howard v. Johnoff Restaurant Co., Mo., 312 S.W.2d 55; Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278. If a proprietor knows, or in the exercise of ordinary care should know, of a dangerous condition of his premises which involves an unreasonable risk of harm to his invitee, and of which the invitee, in the exercise of ordinary care, does not or should not know, a recovery will be permitted against the proprietor. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226; Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468. But if the dangerous condition is obvious and known, or in the exercise of ordinary care should be known, by the invitee, actionable negligence is not established and the invitee will not be permitted to recover. Heine v. John R. Thompson Co., Mo., 330 S.W.2d 867; Wilkins v. Allied Stores of Mo., supra; Schmoll v. National Shirt Shops of Mo., 354 Mo. 1164, 193 S.W.2d 605.

Actions involving the fundamental rule have become so numerous, particularly in Missouri, that as said in Heine v. John R. Thompson Co., supra, cases are now annotated topically depending upon the place of injury, the character of the floor, and the nature of the substance which created the dangerous condition. 63 A.L.R.2d 591, 694; Missouri Digest, Negligence ⊂32. But whatever may be the category in which a particular case may be classified, it is elemental that in a case such as this the plaintiff must establish as the very foundation of his case, "* * * before issues relating to the proprietor's breach of his duty of care can be reached, that the floor on which he fell was, as a matter of fact, dangerously slippery * * *." 63 A.L.R. 2d 702; Heine v. John R. Thompson Co., Mo., supra. And see Cluett v. Union Electric Light & Power Co., Mo., 220 S.W. 865 (affirming Mo.App. 205 S.W. 72); Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723; Daughette v. Montgomery Ward & Co., 236 Mo.App. 218, 146 S.W.2d 72. As has been repeatedly stated, a proprietor is not an insurer of the safety of his invitees, Gruetzemacher v. Billings, supra; Heine v. John R. Thompson Co., supra; Schmoll v. National Shirt Shops of Mo., supra; and his duty is to exercise only ordinary care, not the highest degree of care, Williams v. Kansas City Term. Ry. Co., 288 Mo. 11, 231 S.W. 954, to maintain his premises in a reasonably safe condition for the use of invitees exercising ordinary care. Freeman v. Myron Green Cafeterias Co., Mo., 317 S.W.2d 303;

Howard v. Johnoff Restaurant Co., supra; Wilkins v. Allied Stores of Mo., supra. Thus it has been held as a matter of law that a proprietor is not negligent merely because he maintains steps [1] or a floor [2] composed of slippery marble; an entranceway of slick terrazzo; [3] a sloping entranceway in which highly polished brass letters were embedded; [4] a sloping entranceway of small hexagonal tile with a narrow settlement crack therein which left one side a quarter of an inch higher than the other; [5] a slick, waxed and polished linoleum floor; [6] wet steps equipped with safety treads; [7] or pools of water on a stair landing in a store, which accumulated from water carried in by customers on a rainy day. [8] And the courts reached these conclusions even though the evidence showed that the terrazzo, [9] brass letters, [10] steps, [11] and landing [12] were made more slippery by reason of being wet. On the other hand, it has been held that a submissible case was made where the evidence showed that the proprietor permitted: a considerable amount of slush, salt and cinders or dirt to accumulate on a stairway; [13] a pool of water to remain on the floor of a toilet in a swaying train; [14] water and sticky mud on a stairway; [15] or neglected to mop marble steps which it knew became more slippery when rain water was tracked in by customers. [16] Thus the problem presented to us is how the facts and circumstances surrounding this occurrence fit into the pattern of the Restatement rule as it has been established and applied in Missouri. Dean v. Safeway Stores, Inc., supra; Wilkins v. Allied Stores of Mo., supra.

■ After a careful study of the foregoing and other decisions, and giving plaintiff the benefit of all of the evidence favorable to her, we cannot bring ourselves to the view that the evidence was sufficient to make a submissible case. Plaintiff argues that we should infer that there was a considerable amount of water, snow or slush on the floor which had been tracked and carried in by other customers who had previously visited defendant's office that day. If we could draw such an inference it would be of no avail to the plaintiff. Such a condition would have been open and obvious, and plaintiff, as she walked in and waited approximately five minutes while Mrs. Sloan paid her bill, would have had ample time and opportunity to have observed such a condition. Heidland v. Sears Roebuck & Co., 233 Mo.App. 874, 110 S.W.2d 795. There was no claim of inadequate lighting,

1. Rush v. Townsend and Wall Co., Mo., 343 S.W.2d 44.

2. Stoll v. First Nat. Bank of Independence, Mo., 345 Mo. 582, 134 S.W.2d 97.

3. Wilkins v. Allied Stores of Mo., Mo., 308 S.W.2d 623.

4. Schmoll v. National Shirt Shops of Mo., 354 Mo. 1164, 193 S.W.2d 605.

5. Mullen v. Sensenbrenner Mercantile Co., Mo., 260 S.W. 982.

6. Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723.

7. Williams v. Kansas City Terminal Ry. Co., 288 Mo. 11, 231 S.W. 954.

8. Heidland v. Sears Roebuck & Co., 233 Mo.App. 874, 110 S.W.2d 795.

9. Wilkins v. Allied Stores of Mo., supra.

10. Schmoll v. National Shirt Shops of Mo., supra.

11. Williams v. Kansas City Terminal Ry. Co., supra.

12. Heidland v. Sears Roebuck & Co., supra.

13. Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468.

14. Wagner v. Missouri-Kansas-Texas R. Co., Mo., 275 S.W.2d 262, 50 A.L.R.2d 1062.

15. Clifford v. F. W. Woolworth Co., Mo. App., 201 S.W.2d 416, 208 S.W.2d 263; Hubenschmidt v. S.S. Kresge Co., Mo. App., 115 S.W.2d 211.

16. State ex rel. First National Bank in St. Louis v. Hughes, 346 Mo. 938, 144 S.W. 2d 84.

as in Hubenschmidt v. S. S. Kresge Co., Mo. App., 115 S.W.2d 211, and plaintiff testified she could and did look and see the floor. And as the court said in Wilkins v. Allied Stores of Mo., Mo., 308 S.W.2d 623, 628:

" * * * The defendant, as the occupier of the premises in question, was not liable to plaintiff-invitee for injuries resulting from an open and obvious condition of the premises as well known to the plaintiff as to the defendant. Accordingly, if the plaintiff was aware of the condition, or it was such that she must have been conscious of it and of the consequences of disregarding it, she cannot recover. Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W. 2d 390, 393; Mullen v. Sensenbrenner Mercantile Co., Mo.Sup., 260 S.W. 982, 984, 33 A.L.R. 176; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723, 726; Harper v. First National Bank of Kansas City, Mo. Sup., 196 S.W.2d 265, 267; Schmoll v. National Shirt Shops of Missouri, 354 Mo. 1164, 193 S.W.2d 605, 608; Fletcher v. North Mehornay Furniture Co., 359 Mo. 607, 222 S.W.2d 789, 794. In the Schmoll case, supra, 193 S.W.2d 605, 608, the court said: 'Defendant, who was not subject to liability for injuries resulting from dangers that were obvious, should not be obligated to anticipate that its patrons, in the exercise of ordinary care, would fail to appreciate dangers generally known to be inherent in conditions that were obvious.' "

■■ In any event, we cannot indulge an inference which would require us to disregard and ignore plaintiff's own testimony. Plaintiff not only testified that she *saw* the floor, but said that as she walked in and looked at it she saw nothing unusual or out of the ordinary about it. Her pathway in was not more than three feet from the route taken as she started to go out. Questioned as to whether there were any puddles of water on the floor she stated that she saw none. The sum and substance of her entire testimony was that there was only a trace of moisture on the floor which made it feel damp. It was not shown that the damp condition existed a sufficient length of time to have given defendant constructive notice. McElroy v. S.S. Kresge Co., Mo.App., 244 S.W.2d 425. In fact, it is by no means clear from plaintiff's own testimony whether the trace of moisture she felt was brought in by others, or whether it came from melting snow impacted in the corrugated soles of plaintiff's shoes. Assuming, however, that the dampness of the floor resulted from moisture carried in by others, we do not believe that the condition shown was sufficient to support a charge of negligence on the part of defendant. Defendant was not an insurer against all hazards, and on a day such as described by plaintiff it was a physical impossibility to keep the floor from becoming damp. Heidland v. Sears Roebuck & Co., supra. The only way defendant could have maintained a perfectly dry floor for each customer would have been to have admitted them one by one, mopped up as each left, and allowed the floor to become absolutely dry (merely mopping would leave the floor as damp as that shown here) before admitting the next customer. Surely such a procedure would exact far more than the ordinary care which a proprietor is required to exercise. Williams v. Kansas City Term. Ry. Co., supra; Heidland v. Sears Roebuck & Co., supra.

For the reasons stated the judgment should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

WOLFE, (Acting) P. J., ANDERSON, J., and R. KENNETH ELLIOTT, Special Judge, concur.