Eleanor A. ZACHER, Plaintiff-Respondent,

v.

**MISSOURI REAL ESTATE & INSURANCE AGENCY, INC., Defendant-Appellant.**

No. 51021.

Supreme Court of Missouri,

Division No. 1.

July 12, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied Sept. 13, 1965.

Don B. Sommers, Gray & Sommers, St. Louis, for plaintiff-respondent.

Burton H. Shostak, R. E. Keaney, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for defendant-appellant.

WELBORN, Commissioner.

This is an action for $45,000 damages by an employee of a tenant against the landlord for personal injuries alleged to have been sustained by plaintiff when she slipped and fell in a hallway under the control of and maintained by the landlord. The jury's verdict was for defendant. The trial court granted plaintiff a new trial on the grounds of error in an instruction offered by the defendant. Defendant has appealed from the order awarding a new trial.

Plaintiff, Eleanor A. Zacher, was an officer and employee of the A to Z Service Company, a corporation engaged in the insurance business. A to Z was a tenant of the defendant, Missouri Real Estate & Insurance Agency, Inc., in a three-story office building owned by the defendant and located at 20 South Central Avenue in Clayton. A to Z occupied two rooms on the second floor of defendant's building. There were other offices on the second floor occupied by other tenants and all of the offices were entered from a hallway which the defendant controlled and maintained for the common use of the tenants and their employees, customers and patrons.

Plaintiff slipped and fell in the second floor hallway on January 15, 1962. The theory of her cause of action was that water accumulated on the hallway floor during inclement weather and as a result the floor was made very slick and slippery, with the attendant probability that a person walking in the hallway would slip and fall and suffer injury; that the defendant knew or should have known of the condition, but

failed to take steps to prevent the allegedly unsafe condition resulting from the accumulation of water on the floor in inclement weather.

Plaintiff slipped and fell as she was going to work at the A to Z office shortly after 9:00 a. m. Snow which had accumulated over a period of several days prior to the date of the accident remained on the ground. Snow and sleet had also fallen the preceding evening. A witness described conditions as "sloppy underneath because the day before * * * we had snow." Plaintiff was driven to the vicinity of the rear entrance of the building on that morning by her husband. She was wearing low-heeled shoes and new galoshes with corrugated soles. She walked across a parking lot area and through the rear doorway and took the self-operated elevator to the second floor. According to the plaintiff she was not aware when she left the elevator on the second floor of the presence of water on the floor. She had taken a few steps toward her office when, as she stated, "I walked down the corridor and suddenly my feet slipped out from under me and I fell * * * I don't know what happened * * * I can't say I stepped in a puddle." However, plaintiff stated that, as she lay on the floor after falling, she could see puddles of water on the floor elsewhere and she felt water on her coat and hair.

The flooring material on the second floor was a light brown or beige vinyl tile which had been installed in 1959 or 1960. It was waxed and polished regularly by the janitor, although less frequently in the winter than at other times. The defendant's building manager who occupied an office on the third floor of the building testified that she had seen water tracked to the third floor of the building on inclement days. The janitor employed by the defendant testified that he had mopped slush from the second floor hallway the day before plaintiff fell. Plaintiff, her husband and another employee of A to Z testified that, on days of inclement weather

prior to the accident, water was tracked into the building and onto the second floor. Other than plaintiff no one testified to the presence of water on the second floor at the time plaintiff fell.

On this appeal defendant contends the action of the trial court in awarding plaintiff a new trial was erroneous but that in any event plaintiff failed to make a submissible case.

"A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe." 2 Restatement, Torts, Sec. 360, p. 976. See Annotation "Landlord's liability for injury due to defects in inside passageways and chambers used in common by tenants." 25 A.L.R.2d 444.

■ Viewing the evidence in the light most favorable to plaintiff, we are of the opinion that plaintiff did make a submissible case. There was undisputed evidence that the defendant's employees were aware of the accumulation of water on the second floor hallway in periods of inclement weather.

"The presence of water alone (or water, dampness, wet slush or slime, as the evidence tends to show was present on the steps of defendant's stairway in our case) on the variously covered surfaces of floors, or of the stairs in stores, has been recognized, in the physical settings and the shown circumstances of cases, as supporting the inference of a condition dangerous and not reasonably safe for the invitee's use. Clifford v. F. W. Woolworth Co., Mo.App.,

201 S.W.2d 416, certiorari quashed State ex rel. F. W. Woolworth Co. v. Bland, 357 Mo. 339, 208 S.W.2d 263; Bankhead v. First Nat. Bank in St. Louis, Mo.App., 137 S.W.2d 594, certiorari quashed State ex rel. First Nat. Bank in St. Louis v. Hughes, 346 Mo. 938, 144 S.W.2d 84; Hubenschmidt v. S. S. Kresge Co., Mo. App., 115 S.W.2d 211; Belzer v. Sears, Roebuck & Co., Mo.App., 76 S.W.2d 701. Nor is it essential to a plaintiff's case that there be evidence introduced that the water rendered the surface of the stairs slippery and dangerous. It is common knowledge that various surfaces are slippery when wet; and a jury may infer that a wet, slippery surface, in some circumstances, is not reasonably safe for an invitee's use." Stafford v. Fred Wolferman, Inc., 307 S.W.2d 468, 473.

As pointed out in Wolferman, a jury could reasonably infer that water on a floor surface of the type here involved would make the surface slippery and dangerous. Defendant's employees in fact acknowledged that water would make the floor slippery.

In view of the defendant's actual knowledge of the condition which developed during inclement weather, this is not an instance in which the length of time that the particular water had been on the floor was significant from the standpoint of notice to the defendant. Defendant had knowledge of the condition which arose during then existing weather conditions. It was for the jury to determine whether or not the condition which the accumulation of water produced was a dangerous one and whether or not the defendant, by the exercise of reasonable care, could have made the condition safe.

■ Of course, plaintiff to make a submissible case must show not only negligence on the part of defendant, but also causal connection between such negligence and her injury. Causation, along with the other elements of liability, may be shown by circumstantial evidence, although the matter cannot be left to mere speculation and conjecture. "The rule, however, does not require that there must be direct proof of the fact itself. This would often be impossible. It is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusion therefrom may be fairly inferred." Pentecost v. St. Louis Merchants' Bridge Terminal R. R. Co., 334 Mo. 572, 66 S.W.2d 533, 536; Watt v. St. Louis Public Service Company, Mo.Sup., 354 S.W.2d 889, 891(1–3). See also Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756, 758–759(6); Clifford v. F. W. Woolworth Co., Mo.App., 201 S.W.2d 416, 421–422(1, 2).

Here, although plaintiff did not testify that she slipped in water and, in fact, acknowledged that she could not say that she "stepped in a puddle," she did testify that, after she fell, she was lying in water and that it was a sufficient accumulation to make her coat and hands wet, as well as her hair from "mopping" the floor as she turned her head from side to side while lying where she had fallen. She could also see accumulations of water elsewhere so that there was no question as to evidence of the presence of water in the area where plaintiff fell and elsewhere in the second floor hallway.

In Smith v. Thompson, Mo.App., 258 S.W.2d 278, cited and relied upon by defendant, plaintiff was held not to have made a submissible case under the Federal Employers' Liability Act on a charge of failure to provide a safe place to work because of inadequate lighting when he testified that he did not know what caused him to fall. In view of the plaintiff's statement in that case, the court concluded that because there were so many other possible causes of the fall, not related to the negligence charged, causation would have been a mere matter of speculation. In this case, plaintiff likewise stated that she didn't know what happened. However, she also testified to matters which would have excluded several possible causes of her fall, such as that she "stomped" her

feet on a pad before entering the building; that she experienced no difficulty in walking from the entrance to the elevator; that she was wearing galoshes with corrugated soles over low-heeled shoes; that she was not walking hurriedly. She was, of course, not required to exclude all possible causes for which defendant would not be liable. "And causal connection may be, and often is, proved by showing facts and circumstances which 'fairly suggest' negligence as the proximate cause, in the light of ordinary experience." Swanson v. Godwin, Mo.Sup., 327 S.W.2d 903, 910. Here, the facts proved, viewing plaintiff's testimony in its most favorable light, were of such a nature and so related to each other that a jury, "in the light of ordinary experience," could reasonably infer that the proximate cause of her fall was water which defendant had negligently permitted to accumulate on the hallway floor. The fact that plaintiff did not directly so testify does not preclude such a conclusion.

■ Defendant contends that plaintiff's situation is almost identical with that of the plaintiff in Wilburn v. Southwestern Bell Telephone Company, Mo.App., 382 S.W.2d 49, in which the court concluded that there was no submissible case. However, Wilburn was an owner-invitee situation. Although the principles which govern liability in such a case and the present one are in many respects similar, the distinguishing feature is that the landlord may be subject to liability "irrespective of whether the lessee or those upon the land in his right know or do not know of the dangerous condition." 2 Restatement, Torts, Sec. 360, Comment a, p. 976. This distinction is significant in the comparison of the present case with Wilburn. As pointed out in that case: "Fundamentally, the basis of a proprietor's liability in a case of this nature is his superior knowledge of the defective condition of his premises which results in injury to his business invitee." 382 S.W.2d 53. In Wilburn plaintiff testified that the floor was merely damp. She admitted that she observed no puddles of water on the

floor. In such circumstances there was not sufficient evidence to charge the owner with knowledge of an unsafe condition on the premises. Nor could the court in Wilburn infer, as plaintiff argued, that there was a considerable amount of water on the floor because, if such had been the case, plaintiff, who had stood in the area where she fell for approximately five minutes, "would have had ample time and opportunity to have observed such a condition." 382 S.W.2d 54. In effect, plaintiff's dilemma in Wilburn was that, to show that there had been sufficient accumulation of water to notify the defendant of the potentially dangerous condition, she would have to have shown such knowledge of the condition on her own part as would have defeated her cause of action.

■ Here we are not faced with such a problem. Plaintiff's knowledge of the condition would not defeat her cause of action, but would bear only upon the issue of her contributory negligence. Taylor v. Hitt, Mo.App., 342 S.W.2d 489, 496. No contention is here made that plaintiff was guilty of contributory negligence as a matter of law.

Defendant also points to the statement in Wilburn (382 S.W.2d 55):

"Assuming however, that the dampness of the floor resulted from moisture carried in by others, we do not believe that the condition shown was sufficient to support a charge of negligence on the part of defendant. Defendant was not an insurer against all hazards, and on a day such as described by plaintiff it was a physical impossibility to keep the floor from becoming damp. Heidland v. Sears, Roebuck & Co., supra. The only way defendant could have maintained a perfectly dry floor for each customer would have been to have admitted them one by one, mopped up as each left, and allowed the floor to become absolutely dry (merely mopping would leave the floor as damp as that shown here) before admitting the next customer. Surely such a procedure would exact far more than the ordinary care which a proprietor is required to exercise."

However, in this case, the jury might have found that an accumulation of water as distinguished from mere dampness could have been prevented in other ways than by mopping, such as, for example, by the placing of mats in strategic locations. Admittedly there were no mats or pads on the second floor hallway. Whether or not defendant's actions measured up to the standard of care required was for the jury to determine.

Having determined that plaintiff made a submissible case we turn to the contention that the trial court erred in ordering a new trial. Plaintiff submitted her cause of action by an instruction which essentially told the jury:

" * * * the second floor hallway of the building at 20 South Central, would become tracked with water on days of inclement weather and that such condition frequently reoccurred whenever there were days of inclement weather and if you find that by reason thereof, said hallway floor became slick and slippery * * * that on January 15, 1962, prior to the time that plaintiff entered * * * upon the second floor hallway * * *, water had been tracked onto the floor because of inclement weather conditions * * * she stepped upon an area of the floor upon which water had been tracked and that she thereby was caused to slip and fall and to sustain injuries * * * that the defendant knew or, in the exercise of ordinary care, could and should have known that the second floor hallway would become tracked with water and become in the aforesaid dangerous and not reasonably safe condition on days of inclement weather * * * (in time) to have prevented the accumulation of water thereon, or to have prevented said hallway floor from becoming slick and slippery under the circumstances * * *" etc.

On behalf of the defendant the court gave Instruction No. 8 which read as follows:

"The Court instructs the jury that, under the law, defendant was not an insurer of the safety of plaintiff as she was walking down the corridor in question, but it was only required to exercise ordinary care to maintain said corridor in a reasonable (sic) safe manner for use by tenants and the employees of tenants, including plaintiff.

"Therefore, you are instructed that if you find from the evidence that the corridor in question was maintained in a reasonably safe manner, then the Court instructs you that, regardless of all other issues in the case, plaintiff is not entitled to recover and your verdict must be in favor of the defendant."

In her motion for new trial the plaintiff attacked Instruction No. 8 on the grounds that the instruction gave the jury a roving commission, without factual hypothesis, to find that the defendant maintained the hall in a reasonably safe manner; that it gave the jury a roving commission to determine when the hallway was so maintained; that the instruction was not confined to the occasion in question and that it ignored and conflicted with the issues of negligence submitted in Instruction No. 2. The trial court sustained plaintiff's motion for new trial because of errors alleged in the giving of Instruction No. 8. On this appeal defendant contends that the instruction read as a whole adequately limited defendant's duty to the time in question; that it is a correct converse of an essential element of plaintiff's case and does not conflict with plaintiff's verdict-directing instruction; that when read as a whole and in connection with all other instructions it could not have misled the jury. By its original brief here defendant argued that the instruction in effect imposed the duty upon the defendant to maintain the hallway in a proper manner at *all* times. Plaintiff countered that the instruction properly read would excuse defendant from liability if the hallway was maintained in a safe manner at *any* time. By its reply brief defendant states: " * * if we are wrong that the instruction refers to proper maintenance of the premises 'at all times' then the argument made by plaintiff that the instruction refers to 'at any time' is surely acceptable, since we find no

difference in exercising ordinary care 'at all times' or 'at any time'; * * *." Certainly insofar as the potential effect of this instruction is concerned, there is a difference whether it refers to the manner of maintenance of the hallway at all times or at any time. This argument sufficiently demonstrates, in our opinion, the ambiguity found in this instruction. Examination of the instruction certainly shows that it is not by its terms limited to the occasion in issue. Although the instruction does refer to the duty owed plaintiff as she was walking down the hallway, plaintiff was in the hallway on other occasions so that such limitation if applied to the second paragraph of the instruction does not necessarily limit the plaintiff's duty at the time in question under the conditions then existing. The defendant defends the instruction as a converse of the issues raised by the plaintiff's verdict-directing instruction, No. 2, of the defendant's failure to maintain the hallway in a reasonably safe condition. Such was defendant's duty and such was the submission in plaintiff's Instruction No. 2. However, Instruction No. 8 does not refer to the condition of the hallway but to the manner of its maintenance. We question that the words "condition" and "manner" are synonymous and that Instruction No. 8 can properly be considered a true converse instruction.

 In any event the prejudicial effect of the instruction was a matter primarily for the trial court. Although the assignment of error in the motion for new trial did not expressly charge that the instruction was misleading, such was the effect of the specifications. In such circumstances this court looks with greater liberality on the action of the trial court in awarding a new trial. Coit v. Bentz, Mo.Sup., 348 S.W. 2d 941, 945–946(8); Stone v. Engler, Mo. Sup., 349 S.W.2d 38, 41(2); Shaffer v. Sunray Mid-Continent Oil Company, Mo. Sup., 336 S.W.2d 102, 106(1, 2). We are not disposed in this case to set aside the action of the trial court.

The order of the trial court is therefore affirmed.

HOUSER, C., dissents.

HIGGINS, C., concurs.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.