Pearl TRABUE, Plaintiff-Respondent,

v.

Gary FIELDS, d/b/a Antioch Color Center, Defendant-Appellant.

No. 24955.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Roy F. Carter, Forest W. Hanna, Kansas City, Sprinkle, Carter, Sprinkle, Larson & Hanna, Kansas City, of counsel, for appellant.

Lyman Field, Rogers, Field & Gentry, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is an action to recover damages for personal injuries sustained by plaintiff when she fell on the floor of defendant's store. Trial resulted in a verdict and judgment for $10,000, from which defendant appeals on the sole ground that plaintiff did not make a submissible case.

Gary Fields, d/b/a as Antioch Color Center, is the defendant. Both Mr. and Mrs. Fields worked in the store which was located in the Antioch Shopping Center in Kansas City, Missouri. The store was about 20 feet wide and was approximately 50 feet in depth. There was a false ceiling. The floor was vinyl asbestos. The second floor was occupied by Thriftway.

On July 19, 1965, Mrs. Pearl Trabue, plaintiff, then 66 years of age, and her husband, entered defendant's store to purchase paint. Mr. Fields was at a National Guard Camp and Mrs. Fields was in charge

of the store. Mrs. Trabue slipped and fell a few feet from the front door. She alleges that her fall was caused by an accumulation or puddle of water on the floor. In her testimony plaintiff said she did not see the water until after she fell. She testified that she saw other puddles of water on the floor near her after she had fallen; that she said to Mrs. Fields: "You really should mop the floor" and that Mrs. Fields replied: "I have mopped. The roof is leaking." Mr. Trabue died prior to the trial and therefore was not available as a witness.

Mr. and Mrs. Fields rented the premises in 1963. Mr. Fields testified that there was a canopy extending from the front of their store out over the sidewalk. He said that the "canopy is not bolted flush against the exterior front wall—probably it extends out maybe one inch or two inches, and so, therefore, there is a gap of one or two inches between the exterior wall and the canopy—so when you get a rain—any type of rain, as far as that goes—it runs down this way between the wall and the roof." He said that when there was a heavy rain, "this water will run down between the wall and this canopy. It will run right down in front of the front door * * *. It builds up here in a puddle, and then, with the wind whipping, it will pull it in under the door and on inside." He testified further "the only thing you can do is keep a mop handy. And we generally keep a mop by the front door and keep it mopped up." He said they normally kept a mop in a back storeroom but when the rains came, they kept it "behind the front door."

Mrs. Fields testified substantially the same as her husband respecting the water entering the store under the door during heavy rains and especially when the wind was right. She stated that there had been "lots of rain on July 19, and a few days before", and "everybody's basement flooded"; that it was raining when she went to work on the morning of July 19, and it "rained throughout the day." She testified that when she entered the store on the morning of the 19th she saw water had leaked in under the door and so she mopped. She kept the mop behind the front door on that day and mopped periodically.

Both Mr. and Mrs. Fields testified that they had complained to the Curry Company (owner of the building) about the water coming in under the door when it rained but no repairs had been made. Mr. and Mrs. Fields tried using mats and rugs but found them unsatisfactory. After Mrs. Trabue's fall, the Curry Company weatherstripped under the door, but the water still came in, especially when the door was opened. The records of the weather bureau introduced in evidence showed that on July 19, 1965, 2.72 inches of rain fell in the Kansas City area.

Numerous opinions have been written on these "slip and fall" cases. The law as to such causes of action has been rather clearly defined. In the recent cases the disputed question is usually whether or not the facts come within or are outside the legal requirements for a submissible case.

■ When a customer enters a store, the relationship of owner-invitee or business-invitee arises. The owner or proprietor has the duty to exercise ordinary care to keep his premises in a reasonably safe condition for an invitee's use. Stafford v. Fred Wolferman, Inc., Mo.Sup., 307 S.W. 2d 468, 473. Before a store owner can be liable he must have notice, actual or constructive, of the defective condition. Ward v. Temple Stephens Co., Mo.Sup., 418 S.W.2d 935, 938. In other words, the owner must actually know of the condition or it must have existed a sufficient time for him, in the exercise of ordinary care, to have known about it and effected a remedy or warned the invitee.

■ This court in McElroy v. S. S. Kresge Co., Mo.App., 244 S.W.2d 425, 428, stated the requirements for liability in

such cases by adopting the following language from Section 343, Restatement of Torts, page 428.

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, *but only if,* he

"(a) *Knows, or by the exercise of reasonable care could discover,* the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) Has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) Invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) To make the condition reasonably safe, or

"(ii) To give a warning adequate to enable them to avoid the harm * * * (Italics ours).

"This statement of the law has many times been approved by the courts of this state, (citing cases)".

█ On appeal defendant says plaintiff did not make a submissible case because: "There is no evidence that any alleged dangerous or unsafe condition of the floor existed a sufficient length of time to have given defendant constructive notice of such condition." Plaintiff, on the other hand, says defendant had actual notice that the store floor became unsafe during inclement weather and therefore it was unnecessary to prove knowledge of the existence of the particular puddle which caused the plaintiff to fall.

If July 19, 1965, had been the first time that water had run under defendant's door and onto the store floor and if defendant or Mrs. Fields, who was in charge at the time, did not actually know about it, and if the condition were not shown to have existed long enough for defendant, in the ex-

ercise of reasonable care, to have known about it and done something about it, we would be impressed by defendant's contention. However, in the case before us, the faulty or unusual construction of the canopy and resultant water flow under the front door had existed for more than one year to defendant's knowledge. Mr. and Mrs. Fields had repeatedly but unsuccessfully called upon the landlord to remedy the condition. The landlord did weatherstrip under the door after the plaintiff fell. Mr. and Mrs. Fields knew and admitted they knew the water came in under the door during heavy rains and especially when the wind was right. Apparently they sensed the hazard and kept a mop readily available —stored in the back in dry weather and behind the front door during wet weather. Mr. and Mrs. Fields both testified there was heavy rainfall on July 19, and immediately before. Actually, 2.72 inches fell on July 19. Mrs. Fields knew water was coming in under the door when she went to work at 8:00 a.m. that morning. She got the mop and "mopped up" just after coming to work. She kept the mop behind the front door and plaintiff says she told her she had been mopping. This dangerous condition, insofar as it derived from the defective construction and running water under the door, was really a latent defect known to defendant but not readily apparent to plaintiff.

In the case of Zacher v. Missouri Real Estate & Insurance Agency, Inc., Mo.Sup., 393 S.W.2d 446, 448, 449, the plaintiff slipped and fell on an accumulation of water in a hallway. She brought suit against the landlord, who maintained the hallway. She testified that after she fell she could see an accumulation of water in the hallway and she was lying in water. It was ruled that plaintiff made a submissible case. We quote in part from the opinion:

"Viewing the evidence in the light most favorable to plaintiff, we are of the opinion that plaintiff did make a submissible case. There was undisputed evidence that the defendant's employees

were aware of the accumulation of water on the second floor hallway in periods of inclement weather.

\* \* \* \* \* \*

"In view of the defendant's actual knowledge of the condition which developed during inclement weather, this is not an instance in which the length of time that the particular water had been on the floor was significant from the standpoint of notice to the defendant."

We have read and considered the cases called to our attention by defendant. The plaintiff was denied recovery in McElroy v. S. S. Kresge Company, supra, because there was no evidence of defendant's actual knowledge of the slippery substance on the floor or of the length of time it had been there, or how it got there. In Wilburn v. Southwestern Bell Telephone Co., Mo.App., 382 S.W.2d 49, 53, the court held that an invitee may not recover where the dangerous condition is obvious or if in the exercise of ordinary care should have been known by the invitee. A recovery was not allowed when the invitee slipped on snow and slush tracked in, when the condition of the floor was obvious and when there was no showing how long the dangerous condition had existed. The opinion in Brophy v. Clisaris, Mo.App., 368 S.W.2d 553, merely holds that proof the dangerous object had been on the floor for ten minutes was not a sufficient length of time to charge defendant with constructive knowledge. We do not believe that those opinions or others referred to present the same question as in the case before us.

We believe the facts here show both actual and constructive notice. Defendant knew such condition arose when there was rain. Mrs. Fields knew about it on July 19, because she saw it when she came to work, mopped the floor and placed the mop behind the front door, where it would be readily available. Having such actual and constructive notice of the rain and water coming in under the door so as to require mopping, it cannot reasonably be said that de-fendant was without knowledge of the dangerous condition. Viewing the evidence in the light most favorable to plaintiff, we conclude that she made a submissible case.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.