Ruth Ann LEVIN, Respondent,

v.

SEARS, ROEBUCK AND COMPANY, Appellant.

No. KCD 27404.

Missouri Court of Appeals, Kansas City District.

March 29, 1976.

Robert M. Kroenert, John W. Cowden, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for appellant.

Charles C. Shafer, Jr., Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

The respondent (hereafter plaintiff) brought an action for damages for personal injuries sustained as a result of a fall in the parking lot of the appellant (hereafter defendant). The case was tried before a jury and resulted in a verdict and judgment for the defendant. Plaintiff filed a motion for a new trial, which was sustained on the sole ground that the court erred in giving Instruction No. 4 on the subject of contributory negligence. This reason stems from the fact that the jury was not properly instructed as to the law that, if contributory negligence was found, it was further required that a finding be made that such contribu-

tory negligence *"directly"* caused the plaintiff's damage. Defendant made no serious attempt to refute this obvious and inherent error in Instruction No. 4 as to causation, but rather, asserts that such error "if any" was immaterial and nonprejudicial, since plaintiff failed to make a submissible case of actionable negligence against the defendant and was guilty of contributory negligence as a matter of law, and that, therefore, the court erred in overruling its motion for a directed verdict and in sustaining plaintiff's motion for a new trial. In this state of the record, the prime problem for resolution is whether plaintiff made a submissible case for the jury.

▆▆▆ In passing upon the sufficiency of plaintiff's evidence, an appellate court must always recognize and apply certain well-articulated rules and well-defined criteria. Such court must indulge the presumption that the plaintiff's evidence is true, disregard defendant's evidence in conflict therewith, and give the plaintiff every reasonable favorable inference to be drawn from all the evidence. But these rules and criteria do not go so far as to permit the appellate court to disregard the dictates of common reason and to accept as correct or true that which obviously under all the circumstances in evidence cannot be correct or true; nor to give plaintiff the benefit of any other than reasonable inferences. *Hill v. Illinois Terminal Co.,* 100 S.W.2d 40, 47[4] (Mo.App.1937). See also, *Wilkins v. Allied Stores of Missouri,* 308 S.W.2d 623, 629[4] (Mo.1958).

▆▆ The application of general rules of appellate review are further restricted by other precautionary exceptions. The plaintiff is bound by his own testimony; may not have the benefit of or resort to the support of evidence inconsistent with such testimony, and conceded facts may not be disregarded. *Neal v. Kansas City Public Service Co.,* 353 Mo. 779, 184 S.W.2d 441, 442[1, 2] (1944). The court may not supply missing evidence, give the plaintiff the benefit of unreasonable, speculative or forced inferences, or consider only isolated parts of the plaintiff's evidence. *Merriman v. John-*

*son,* 496 S.W.2d 326, 330[1] (Mo.App.1973); *Economy Gas Co. v. Bradley,* 472 S.W.2d 878, 880[2] (Mo.App.1971); *Adler v. Laclede Gas Co.,* 414 S.W.2d 304, 306[1] (Mo.1967).

The plaintiff in the case at bar submitted her case upon a single theory of actionable negligence, as set forth in her verdict directing Instruction No. 3, which is as follows:

"Your verdict must be for the plaintiff if you believe:

First, the area of defendant's second parking level where plaintiff was walking *was inadequately lighted* and as a result the area was not reasonably safe for customers, and

Second, plaintiff did not know and by using ordinary care could not have known of this condition; and

Third, defendant knew or by using ordinary care could have known of this condition; and

Fourth, defendant failed to use ordinary care to provide *adequate lighting,* and

Fifth, as a direct result of such failure, plaintiff was injured unless you believe plaintiff is not entitled to recover by reason of Instruction No. 4." (Emphasis supplied)

Under the above-noted requirements of review and the issue presented by the plaintiff's instruction above quoted, a somewhat detailed summary of the evidence is required. Initially, it should be noted that there is no dispute that the status of plaintiff was that of a business invitee upon nor that the defendant was the "possessor" of, the place where plaintiff fell.

On January 9, 1971, the defendant operated a retail store in the Country Club Plaza, Kansas City, Missouri. In connection with this store, it maintained a three-level, open air, column supported parking facility for its customers across the street from the store. Access to the store was afforded by an enclosed ramp or walkway at the top (third) level of the parking facility passing over a public street. Access to the ramp for customers parking on the middle level was

by means of an enclosed stairway. Entry to the stairway from the actual parking surface was by means of a concrete sidewalk about four feet in width and raised about four inches above the parking surface, constructed within but immediately adjacent to the outside walls, thence through a fire door and into the stairwell. Aside from the natural light through the open sides of the facility, there were a number of fluorescent lights hung from the ceiling and spaced at intervals on the second level. Two of these were immediately outside the door to the stairwell, at which point there was also an illuminated sign, "To Store", guiding customers to the stairwell.

Between 9:30 and 10:00 o'clock a. m. on Saturday, January 9, 1971, Leo Levin drove his mother, the plaintiff, an elderly lady, to the defendant's store to shop for a television set. He parked his vehicle in the middle level of the parking facility, escorted his mother across the parking surface to the sidewalk, along the sidewalk to the access door, to the stairway, and thence to the third level, across the ramp or walkway, and into the store. Nothing untoward occurred during this walk into the store; no dangerous conditions or absence of light was noted by the plaintiff or her son.

The plaintiff purchased a television set and she and her son then proceeded by means of the ramp and stairway back to the middle level parking area. They were in the store about 20 to 30 minutes and at about 10:30 o'clock a. m. they arrived back at the door from the stairwell. They passed through the door side-by-side directly across the four-foot sidewalk and about four feet or more across the parking surface when the plaintiff fell. The son testified that the "first thing I noticed that my mother was out of the grasp of my arm; and she laid on the surface of the parking lot area". Neither Leo Levin nor the plaintiff had noticed any foreign substance on the parking surface before the plaintiff fell.

The son testified that when he got his mother to her feet, he noticed a "glob" on the surface which was "probably phlegm".

He didn't know what the "glob" was, but it was wet and did not look like it had been stepped in or disturbed. He observed no moisture "or anything" on his mother's shoes.

Leo Levin testified that it was cloudy on the day of the fall and that the location of the fall did not receive much natural illumination. He stated that after his mother's fall, he, for the first time, noticed that the two fluorescent lights immediately over the door to the stairwell were not on; that he did not know how long they had been out; and that he had no trouble seeing the "glob" when he got his mother to her feet.

The plaintiff testified that she had no difficulty with her walking. She stated that she made no specific observation of the lighting fixtures, but that some were lighted and some were not. There was a contrast in the amount of light in the brightly lighted store interior and the parking lot. This appears in her testimony:

"Q. Now, you mentioned that it was not bright in there, but you certainly— you could see, couldn't you?

A. *Oh sure; I could see.*" (Emphasis supplied)

Her version of the fall is thus revealed:

"Q. And as you walked through this door proceeding to the parking station, generally where were you looking?

A. Well, I can't say I was looking at anything, I was so enthused over the television; we were just talking about it and walking along.

Q. *Did you walk along, by any chance, looking down to see where you were going?*

A. *No;* my son had ahold of my arm. We were just walking along until I just flopped." (Emphasis supplied)

The plaintiff testified and her counsel stipulated in the record that before her fall, she "did not look down". The following then appears from plaintiff's testimony:

"Q. Isn't it also true that prior to your fall, after you came out through those doors into the parking area,

that you were not looking to see if there was anything on the blacktop; isn't that true?

A. *I wasn't looking.*

Q. *And you were not looking to see if there was anything on the blacktop?*

A. *No."* (Emphasis supplied)

After her fall, she observed a grayish substance on the surface and while she had no difficulty seeing it, she did not know how long it had been there. When she got in her son's vehicle after the fall, she noticed a substance on the sole of her shoe which was black and wet. She could not tell if the "glob" had been stepped in but reached that conclusion because her shoe was wet.

The relationship of the parties at the time of plaintiff's fall was that of the possessor of land and invitee. The liability of the possessor (defendant) to its invitee (plaintiff) is generally declared in Restatement, Torts 2nd, Section 343, in the following terms:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, *but only if,* he

(a) *knows or by the exercise of reasonable care would discover* the condition and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect *they will not discover or realize the danger,* or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." (Emphasis supplied)

It has been declared that the doctrine thus stated "together with all of its technicalities is firmly embedded in the jurisprudence of this jurisdiction", *Dean v. Safeway Stores, Inc.,* 300 S.W.2d 431, 432 (Mo.1957). See also, *Devine v. Kroger Grocery and Baking Co.,* 349 Mo. 621, 162 S.W.2d 813, 818[8] (1942).

As has heretofore been noted, the plaintiff relied upon and submitted only one ground of negligence, namely, the failure of the defendant to adequately light the parking lot where she fell. As was pointed out by the court in *Dean v. Safeway Stores, Inc.,* supra, in most, if not all, of the cases prior to *Dean* involving the charge of lack of or insufficient lighting involved some other condition creating a hazardous or dangerous condition. In *Dean,* the plaintiff fell on a wire banana crate handle in an unlighted grocery store parking lot. The court in *Dean* commented that "As a sole or independent act of negligence failure to illuminate has received but little attention in either the cases or the textbooks." *Dean v. Safeway Stores, Inc.,* supra, 300 S.W.2d at l. c. 433. The court, however, held that the plaintiff had made a submissible case of negligence upon the showing that the defendant failed to turn on the parking lot lights, as was customary before dusk, and that therefore the area was dark, although there was no evidence that the defendant had actual or constructive notice of the presence of the wire handle on the parking surface, the direct cause of plaintiff's fall.

In so holding, the *Dean* court followed and applied the rule expressed in *Petera v. Railway Exchange Bldg.,* 42 S.W.2d 947 (Mo.App.1931). In *Petera,* the plaintiff, an employee of a tenant of defendant, and thus an invitee, fell in an unlighted building corridor shortly before 8:00 a. m. while en route to her place of employment. She slipped on a soapy substance on the corridor floor. The evidence showed that the corridor lights were supposed to burn day and night, and that at 6:00 a. m. each morning it was the duty of a janitor to check to see that the lights were on, and to replace any burned out bulbs. The defendant's liability was submitted to the jury upon a disjunctive hypothesis of a finding of either the known presence of the soapy substance or failure to have the corridor lighted. The court said in *Petera* (a statement of law adopted and applied in *Dean*), 42 S.W.2d, l. c. 950[7]:

"Similarly, if due care on the part of defendant required that the lights be burning at the time, as the evidence tends to show, *if they had been turned off for a sufficient length of time that*

*defendant might have learned of the fact, and have turned them on,* all of which is to be inferred from the testimony, and if the insufficiency of the light caused plaintiff to step upon the soap, and to fall, then defendant might be held to respond in damages, *irrespective of whether negligence is to be imputed to it by reason of the presence of the soap upon the floor."* (Emphasis supplied)

■■ While these authorities would authorize the submission by this plaintiff of the sole charge of negligence based upon inadequate lighting, without regard to any liability which might be imputed to the defendant by reason of the phlegm or "glob" upon the parking surface, it was incumbent upon her to show either actual or constructive notice to the defendant of the danger incident to the inadequate lighting. The essence of liability of an owner or possessor of premises to his invitee is based upon superior knowledge of the danger arising from actual or constructive notice thereof. *Cunningham v. Bellerive Hotel, Inc.,* 490 S.W.2d 104, 107[2] (Mo.1973); *Gilpin v. Gerbes Supermarket, Inc.,* 446 S.W.2d 615, 618[2] (Mo. banc 1969); *Brown v. Kroger Co.,* 344 S.W.2d 80, 83[4] (Mo.1961); *Trabue v. Fields,* 433 S.W.2d 48, 50 (Mo. App.1968).

■ In this case, the evidence does not in any way disclose any fact, directly or by permissible inference, upon which it could be found that the defendant had either actual or constructive notice of the fact that the two lights were not burning, in time to have replaced them or warned the plaintiff, a necessary prerequisite for recovery under the legal principles above stated. No attempt was made to show that the defendant had actual notice. The testimony of the plaintiff and her son is silent as to whether these lights were burning or not when they passed directly under them some 30 minutes before her fall. The son testified that he noticed that the lights were out after his mother's fall.

A case strikingly similar on this point is *Hopkins v. Sefton Fibre Can Company,* 390 S.W.2d 907 (Mo.App.1965). There, the plaintiff-invitee was injured in a parking lot by falling over a railroad-like tie divider used to separate parking areas. This fall occurred at night, in the rain. The lot was ordinarily illuminated by four large floodlights burning 1000-watt bulbs. The plaintiff testified that after her fall, she noticed that two of the lights were not burning. In passing upon the submissibility of plaintiff's claim of negligence based upon the alleged inadequate lighting, the court said, 390 S.W.2d, l. c. 911[3, 4]:

"* * * The fact of the matter is that there was absolutely no evidence introduced to show *how long the two floodlights had been out before plaintiff fell.* It is a matter of common knowledge that electric light bulbs burn out from time to time and it is virtually impossible to know in advance when such a failure will occur. For all that plaintiff's evidence showed, the non-functioning floodlights may have burned out only a few minutes before plaintiff fell. In any event, plaintiff's evidence was insufficient to show that the condition existed for a length of time sufficient to charge the defendant with constructive knowledge, and plaintiff therefore failed to make a submissible case on her first predicate of negligence." (Emphasis supplied)

For this fatal deficiency in plaintiff's proof in the case at bar, the defendant's motion for a directed verdict should have been sustained.

■ There is an additional reason why the verdict should have been directed for the defendant. Again, accepting the plaintiff's evidence as true, disregarding all of defendant's evidence contrary thereto, and allowing her all reasonable inferences to be drawn from all the evidence, the plaintiff failed to establish any causal connection between her fall and the asserted inadequate lighting. It is well-established that in order to make a submissible case in any action based on negligence, it must be demonstrated that the negligence is the proximate cause of the injury complained of and the test to be applied is "whether, absent the negligent act, the injury or damage

would not have been sustained." This connection need not be shown by direct evidence if the "facts proved are of such nature and so connected and related that the conclusion of causal connection may be fairly inferred * * * " *Joiner v. Kurt's Chip-a-Way Park, Inc.,* 510 S.W.2d 773, 775[3, 4] (Mo.App.1974); *James v. Sunshine Biscuits, Inc.,* 402 S.W.2d 364, 375[3] (Mo.1966); *King v. Ellis,* 359 S.W.2d 685, 688[2] (Mo.1962); *Penberthy v. Penberthy,* 505 S.W.2d 122, 127[5] (Mo.App.1973).

In the first place, the evidence showed by the plaintiff's own testimony, as above set forth, that as she stepped down from the entranceway platform to the parking level, she was not looking down; she couldn't say she was looking at anything; she and her son were "just talking" and "walking along"; and even though it was not bright, she could see. After the fall and after her son helped her to her feet, both of them, from a standing position, had no difficulty seeing the "glob" of phlegm on the surface. The conclusion is inevitable that the lighting failure of the two fixtures had no direct, causal or proximate connection with her fall. Stated conversely, under her own testimony, no amount of artificial light would have prevented the fall.

In connection with this, the evidence was wholly insufficient to establish as a fact, or by reasonable inference, that had the two lights been on, the visibility or light conditions at the place of plaintiff's fall would have been altered. The photographic exhibits clearly establish that the purpose of these particular lights was to illuminate the four-foot wide walkway immediately in front of the door into the store. Plaintiff had passed across this area without incident and had walked several feet across the parking surface when she fell. Additionally, the same exhibits clearly show that the second level of the parking facility was mostly open to the natural light, and although the plaintiff's son testified the morning was cloudy and the plaintiff described it as partially so, the Local Climatological Data, officially certified and admitted without objection and by agreement,

showed that there were 9.6 hours of sunshine on the day in question.

The defendant's motion for a directed verdict should have been sustained for the additional reason that the evidence failed to show any causal connection between the negligence charged and the plaintiff's damage.

By reason of the conclusion reached, it becomes unnecessary to consider the defendant's further point, that the plaintiff was guilty of contributory negligence as a matter of law. Likewise, since plaintiff failed to make a submissible case, any error in Instruction No. 4 becomes immaterial and the trial court erred in granting plaintiff a new trial for that reason.

The order granting plaintiff a new trial is therefore reversed and set aside, and the cause remanded with directions to enter judgment for the defendant.

All concur.