**Richard B. HOKANSON, Respondent,**

v.

**JOPLIN RENDERING COMPANY, INC., Appellant.**

**No. 57259.**

Supreme Court of Missouri, Division No. 2.

March 11, 1974.

Motion for Rehearing or for Transfer to Court en Banc for Modification of Court's Opinion Denied May 13, 1974.

Joseph W. Amick, Kansas City, John R. Martin, Joplin, for respondent; Jackson & Sherman, Kansas City, Martin, Burden & Richart, Joplin, of counsel.

Ross T. Roberts, Malcolm L. Robertson, Joplin, for appellant; Blanchard, Van Fleet, Robertson & Dermott, Roberts & Fleischaker, Joplin, of counsel.

HOUSER, Commissioner.

Action by Richard B. Hokanson against Joplin Rendering Co., Inc. for $100,000 damages for personal injuries. A jury trial resulted in a verdict and judgment for plaintiff for $67,000. Defendant filed a notice of appeal prior to January 1, 1972.

Plaintiff was employed by Ed Hokanson & Sons, Inc., an independent contractor, with which defendant had a contract to provide labor and equipment to install, revise and make operable a continuous process rendering machine. Defendant's business is that of rendering animal by-products and offal into high protein animal feed concentrates. The machinery with which plaintiff was working at the time of his injury, and which he, his employer and associates were attempting to perfect, was located in defendant's plant at Joplin. Plaintiff, alone in the "cook" room of the plant, ascended a 10-foot wooden ladder in connection with his work. Five to 10 minutes after he climbed up on the ladder the base of the ladder slipped. Plaintiff grabbed for an adjacent beam to keep from falling. Instead of reaching the beam plaintiff's gloved left hand went into the valve box. Rotating machinery engaged his glove and hand and pulled his hand into the machinery, resulting in the loss of

his left hand. Plaintiff testified that prior to the time the base of the ladder slipped he made no unusual movement. Plaintiff's theory of liability, submitted to the jury by Instructions Nos. 5 and 6, was (1) that there was grease on the floor so that the floor was not reasonably safe for workers, a condition known to defendant but not known to plaintiff and that defendant failed to use ordinary care to remove the grease, and (2) that defendant furnished plaintiff with a ladder with greasy feet, dangerous for the intended use, a condition known to defendant but not known to plaintiff, and that defendant failed to warn plaintiff of the dangerous condition.

Defendant's first point is that plaintiff, an employee of an independent contractor and business invitee, failed as a matter of law to make a submissible case against defendant, a possessor of land charged with causing bodily injury as a result of an artificial condition thereon.

 The applicable rules governing this case appear in Restatement of the Law of Torts, Second (1965), §§ 343 and 343A(1).

§ 343: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

§ 343A(1): "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." [1]

 "Fundamentally, the basis of a proprietor's liability in a case of this nature is his superior knowledge of the defective condition of his premises which results in injury to his business invitee. Gruetzemacher v. Billings, Mo., 348 S.W. 2d 952; Howard v. Johnoff Restaurant Co., Mo., 312 S.W.2d 55; Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278. If a proprietor knows, or in the exercise of ordinary care should know, of a dangerous condition of his premises which involves an unreasonable risk of harm to his invitee, and of which the invitee, in the exercise of ordinary care, does not or should not know, a recovery will be permitted against the proprietor. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226; Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468. But if the dangerous condition is obvious and known, or in the exercise of ordinary care should be known, by the invitee, actionable negligence is not established and the invitee will not be permitted to recover. Heine v. John R. Thompson Co., Mo., 330 S.W.2d 867; Wilkins v. Allied Stores of Mo., supra [Mo., 308 S.W.2d 623]; Schmoll v. National Shirt Shops of Mo., 354 Mo. 1164, 193 S.W.2d 605." Wilburn v. Southwestern Bell Tel. Co., 382 S.W.2d 49, 53 (Mo.App.1964).

 Under the record in this case we declare as a matter of law that there was no legal duty resting upon defendant to exercise reasonable care to protect plaintiff

1. Missouri courts have frequently applied the statement of this rule which appeared in the first Restatement of the Law of Torts (1934) § 343. Dixon v. General Grocery Co., 293 S.W.2d 415 (Mo.1956); Dean v. Safeway Stores, 300 S.W.2d 431 (Mo.1957); Wilkins v. Allied Stores of Mo., 308 S.W.2d 623 (Mo.1958); Harbourn v. Katz Drug Co., 318 S.W.2d 226 (Mo.1958); McElroy v. S. S. Kresge Co., 244 S.W.2d 425 (Mo.App. 1951); Brophy v. Clisaris, 368 S.W.2d 553 (Mo.App.1963); Wilburn v. Southwestern Bell Tel. Co., 382 S.W.2d 49 (Mo.App.1964); McClure v. Koch, 433 S.W.2d 589 (Mo.App. 1968); 22 Mo.Dig. Negligence ⬩32 and 48.

against danger, for the reason that there is no evidence of superior knowledge by defendant of the allegedly dangerous condition of the premises or the appliance. On the contrary, there is an abundance of evidence, including plaintiff's personal testimony, demonstrating beyond any possibility of difference of opinion on the question, that the dangers involved were open, obvious and apparent for all to see and that plaintiff's personal knowledge and realization of the risk of harm was equal to (if not greater than) that attributable to defendant. In gauging defendant's duty or lack of duty to this invitee we apply these rules: " ' "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." ' 65 C.J.S. Negligence § 50, p. 541. [Citing Missouri decisions.] * * * ' "These decisions mean that an inviter is under no duty to protect an invitee who is in an equal position to protect himself. Where the danger is obvious or known to the invitee he consents to the risk and the inviter owes no duty." ' " Sellens v. Christman, 418 S.W.2d 6, 8 [2] (Mo.1967); Coleman v. Buehner, 444 S.W.2d 16 (Mo. App.1969); Dixon v. General Grocery Co., 293 S.W.2d 415, 418 [2] (Mo.1956).

The conditions of the floor and ladder were not in the nature of hidden dangers, traps, snares, pitfalls, etc. The existence of these conditions was either testified to by plaintiff and therefore conclusively shown to have been known to plaintiff, or unquestionably under the evidence was as readily apparent to him as to the representatives of defendant corporation.

The general conditions of the employment; the prevalence and distribution of grease throughout the plant, on the machinery, on the clothes of the men, on the appliances and floor, arising out of the regular operations of the plant, as well as in the course of trial runs of "product" made by employees of the independent contractor, were well known to plaintiff. The particular condition of the ladder and that portion of the floor of the cook room where the ladder was set and used on the morning of May 17, 1968, and the dangers and risks involved in using the ladder at that time and place, were obvious to plaintiff and were not only reasonably apparent to plaintiff but were as well known to him as to defendant. Plaintiff had worked in this plant as early as January, 1967. He worked there again intermittently during the summer of 1967. He began working there on a regular basis (several times a week) in the fall of 1967. He had been working there regularly for six months prior to May 17, 1968, the date of accident. He worked there on Monday, Tuesday, Wednesday and Thursday before the Friday on which the accident occurred. Plaintiff's personal testimony reveals his intimate knowledge of the entire situation. He could trace the plant operation from the time the animal offal was unloaded at the dock, through the feather room, the cookers, presses, etc. to the final feed concentrate. He knew that defendant's product was greasy. He was constantly working around defendant's large vats full of fatty grease. He knew that when the men shoveled cooked meat into the presser they sometimes spilled it on the floor; that hot steam containing grease arose from the cooker and vats; that it condensed and the condensate would gather in cool places; that the concrete floor was a cool surface; that occasionally the product would spill or fall on the floor. He had seen grease "pop out and go across the room." He knew that grease was there; that it was "all over"; that one worked around grease "all time"; that grease was on the machinery all around him; that grease was on the floor, including the place where the ladder was placed; that everybody worked in it;

that grease was "simply one of the conditions which you worked in out there"; that the grease "was a factor out there," against which he "took precautions." He testified to the trackage of grease; stated that if you walked around in the cook room you would get it on your feet. He was aware of the regular weekly cleaning of the plant by defendant's employees. He knew that in this cleaning operation they were cleaning up "all this condensate stuff on the floor" and "whatever they would spill." As to the ladders, his coemployee and witness Harold Smith testified that he and plaintiff used the ladders "at least once a day." The ladders belonged to defendant, were kept around the plant, and their use by employees of the independent contractor was known by defendant's manager and acquiesced in; plaintiff and Smith had permission from defendant to use the ladders. Plaintiff was thoroughly experienced in the use of ladders. He knew that a ladder could slip, with or without grease on the floor. He knew "that any ladder could slip on a greasy floor." He knew that "if there were grease on the floor it might tend to be more slippery." Asked if he would "get the ladders and use them and get grease on the ladders" plaintiff answered "All right," and when asked if he knew the ladder used had "worn feet" he said "No" but testified "All right" when asked "You could have known that?" He testified the same with reference to whether he knew the ladder had safety shoes. Neither plaintiff nor Smith braced or secured the ladder.

With reference to the particular day in question, plaintiff was asked "And do you say there was grease on the floor on the day of the accident?", to which he answered, "I think that there was, yes." When asked whether he looked "at the condition of the floor in the cook room before [he] got up on the ladder" he answered in the negative, saying that he "didn't have time," and also answered in the negative when asked whether he felt anything unusual on the floor as he walked across it

where the accident occurred. When inquired of with particular reference to the time he ascended the ladder plaintiff testified that he "just looked at the floor casually" and did not inspect it, but conceded that he *could have* inspected the floor and the feet of the ladder at the time; that it would have taken only a second or two to do so. While stating that the light in the cook room was dim he admitted that you could see where the feet of the ladder were placed "if you wanted to look down and inspect it," but he did not have the time.

■ Plaintiff's testimony relating to the plant, the theory and practice of the defendant's operation, the grease, its prevalence in the plant, and the condition of floor and equipment, together with his admitted acquaintance with and experience in the use of the ladders, reveals such a detailed and thorough knowledge of the conditions under which he worked, and of the dangers involved as a result of the grease, as to put plaintiff as a matter of law in a position to protect himself equal to that of defendant. See Reddy v. Joseph Garavelli, Inc., 232 Mo.App. 226, 102 S.W.2d 734 (1937).

Harold Smith, called by plaintiff, set the ladder in place that morning and worked on the ladder 10 or 15 minutes just prior to the time plaintiff mounted the ladder. Smith testified that the ladder was the ladder they used "the main part of the time." He said he did not pay any attention to the floor where he set the ladder other than to glance at it to see that he had a clean spot to set it; to be sure "there wasn't any loose stuff I would set it on. Set it down, move it to where it was level, solid, and got up and tried it, then went up and started working. * * * I felt in my own mind that it was safe and solid. * * * I felt assured in my own mind that it wasn't going to slip while I was on it." While Smith did not "get down and actually examine the floor" the prevailing conditions were open and available for examination, as attested by his testimony concern-

ing the presence or absence of objects, debris and material on the floor within a 4-foot radius of the ladder, and that to his knowledge the floor "wasn't greasy or slick." Smith testified that the machinery and its operation was under the control of Hokanson employees, who were in charge of the area where he and plaintiff were working at the particular time.

Plaintiff's witness Harry Trussell testified positively that "there was grease on the floor"; that "the foot of the ladder had oil and grease on it" and that there was "grease over the entire floor", when he returned to the scene an hour and a half after the accident. He had no difficulty at that time in seeing the grease or oil on the surface of the floor. He said you could see "the general condition very easily"; that it was "just a matter of opening your eyes."

■ Plaintiff, Smith and Trussell all testified to the lighting conditions, and clearly demonstrated that the condition of the floor and of the ladder (i. e., whether there was grease on either or both) was open for view, obvious and ascertainable by the slightest effort to look. These conditions patently were not hidden, concealed or incapable of being seen because of insufficient lighting or other impediments to viewing. Considering plaintiff's personal witness to the prevailing conditions; what he testified to having actually seen, and what obviously he could have seen by simply looking, it is conclusively shown that the danger was "known or obvious" to plaintiff within the meaning of § 343A(1), supra, and that reasonable minds could not conclude that defendant should expect that plaintiff would not discover or realize the danger, within the meaning of § 343(b), supra.

Turning to the knowledge possessed by defendant, through its managers and employees, there is no evidence that they knew any more about the condition of the floor or ladder, in general, than plaintiff. As to the conditions prevailing on the par-

ticular day in question: Defendant's manager was out of town that day. William McBride, defendant's assistant manager, was in the office when the accident occurred. After plaintiff was taken to the hospital, some 30 minutes after the accident, McBride observed Hokanson "product" on the floor, right beside the ladder. (Hokanson product is the mixture or substance put through the manufacturing process *by plaintiff and Smith* in their continuing effort to improve and perfect the operation. The material would go through various units of machinery, be augered into a valve box and dropped from the valve box into a barrel which sat on the floor. The ladder would be placed next to the barrel for use by the Hokanson employees in climbing up to get in position to dig out the product when it would clog the valve. *"Product" was produced by Hokanson men, not by any of defendant's operations.*) Defendant's maintenance man Stott testified that he saw "product" on the floor on the morning of the accident, and prior to the accident; that it was near the feet of the ladder and possibly around the feet of the ladder. There was nothing to indicate that McBride's or Stott's knowledge of the condition of the floor was superior to that of plaintiff or that the condition to which they testified to was not as readily apparent to plaintiff as to them. In any event, there was no duty on defendant's assistant manager or other employees to warn plaintiff about a condition created by plaintiff and his coemployee Smith. Employee Fleming was in the cook room at the time of the accident but did not see it happen and was not asked about the condition of the floor. Employee Bettes saw plaintiff working that morning, before the accident, and when asked whether the floor "is" greasy answered "No, sir." Defendant's nightman James paid no particular attention to the floor that morning.

■ In view of the parity of knowledge of the general conditions existing at the time and place of this accident, as between invitee and inviter, and of the supe-

rior knowledge of the particular circumstances possessed by the invitee, there was no legal duty owing to plaintiff by defendant with respect to potential dangers, and the trial court erred in overruling defendant's motion for a directed verdict.

 The ordinary care which an invitee must exercise to know and apprehend danger confronting him on premises to which he is invited must be considered in the light of the unusual circumstances surrounding cases such as this, where the invitee is actually in charge of the operation in which he is engaged, has control over the area of the premises where he is injured, is an experienced and skilled workman following his own devices in performing the work he has undertaken, and knows and appreciates the dangers involved in the use of ladders on a greasy floor, and the dangers involved if his hand should enter the valve box with its revolving parts—a unit of machinery he helped to build, and the construction and operation of which he fully understood. In such case he is "expected to employ his superior skill and knowledge to avoid injury to himself." Feldewerth v. Great Eastern Oil Co., 149 S.W.2d 410, 414 (Mo.App.1941). And see Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345, 351 [12–14] (1931), wherein this Court said, "The deceased, in going to the respondent's plant as an independent contractor to do work, was an invitee. The respondent would be liable for injury to him occasioned by any unsafe condition of the premises encountered in the work, which was known to it but unknown to him; but was not liable for injuries resulting from conditions obviously dangerous and known by the deceased to be so. * * * He knew the belt was unguarded, he knew the motor was running 'at great speed and with terrific force,' as the petition says, and yet he took a position 3 feet above the floor with one foot upon the rounded flange of the motor and the other on a cross piece against the wall about 3 feet away, with his legs astride the rapidly moving belt and his body

twisted, while he worked. *He was not a servant ordered by the respondent to go where he did; he was an expert following his own devices. He knew the conditions he would have to cope with. Under the authorities the respondent cannot be charged with liability for the unfortunate result.* [Citing four Missouri cases.]" (Our italics.)

Judgment reversed and cause remanded with directions to set aside the verdict and judgment and enter judgment for defendant in accordance with its motion for a directed verdict.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., and FINCH, J., concur.

MORGAN, J., concurs in result.