**Deborah Jane PYLE, individually, Francis Pyle, III, Jason Pyle, and Luke Pyle, Minors, By and Through Their Next Friend, Deborah Jane Pyle, Plaintiffs–Appellants–Respondents,**

**v.**

**PRAIRIE FARMS DAIRY, INC., and Mid–America Dairymen, Inc., d/b/a Hiland Dairy Company, Defendants–Respondents–Appellants.**

**Nos. 15907, 15909.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 11, 1989.

---

F. William Joyner, Mathew W. Placzek, Joyner, Placzek & Francis, Springfield, for plaintiffs-appellants-respondents.

**288**

David W. Ansley, James B. Condry, Hall, Ansley, Carmichael & Gardner, Springfield, for defendants-respondents-appellants.

GREENE, Judge.

On July 8, 1981, Francis W. Pyle, II, was killed in an on-the-job accident which occurred at the Hiland Dairy plant in Springfield, Missouri. Pyle, an employee of the Paul Mueller Company, fell to his death while repairing a stainless steel liner of a milk storage tank located in a building on Hiland's premises. Pyle, who was standing on the roof while repairing the tank, the top of which extended through and above the roof, lost his balance and fell backward onto a skylight which collapsed under his weight, causing him to fall through the skylight onto the floor below.

Pyle's survivors, who are his wife and children, sued Hiland Dairy Company and its parent companies, Prairie Farms Dairy, Inc., and Mid–America Dairymen, Inc., alleging that Pyle's death was caused by the negligence of the defendants in that they a) failed to warn Pyle that the acrylic cover of the skylight was not strong enough to bear his weight if he fell into it, b) failed to warn Pyle that there was no bracing on the interior side of the skylight which would prevent his fall to the floor below, c) failed to install the bracing in question that would have prevented the fall, and d) failed to install guardrails adjacent to and surrounding the skylight to prevent persons from falling into it.

After hearing evidence, the jury returned a verdict finding the total amount of plaintiffs' damages to be $600,000, and assessed percentages of fault for Pyle's death at 52 percent for the defendants and 48 percent for Pyle. The trial court's judgment affirmed the jury verdict. All parties appeal, with the defendants urging the trial court erred in 1) failing to sustain their motions for directed verdict and judgment notwithstanding the verdict, 2) allowing plaintiffs to introduce photographs of subsequent repairs to the skylight, and 3) instructional error. In their cross-appeal, plaintiffs contend the trial court erred in submitting to the jury the issue of Pyle's contributory negligence, since that issue had no evidentiary support. We affirm the trial court's judgment.

Since it is the defendants' position that plaintiffs did not make a submissible case, we address their appeal first. Their first point relied on in their claim of trial court error is that there was no evidence of any condition or defect on defendants' roof that caused Pyle to fall, and, therefore, plaintiffs failed to make a submissible case as a matter of law. In order to decide this point, it is necessary that we make a detailed recital of facts in evidence, viewed in a light most favorable to uphold the jury verdict.

Defendants Prairie Farms Dairy, Inc. and Mid–America Dairymen, Inc., d/b/a Hiland Dairy Company, own and operate a dairy plant in Springfield, Missouri. Tanker trucks deliver raw milk to the plant, following which the milk is processed into various forms of dairy products. When the milk is brought to the plant's milk receiving room, it is then pumped into large stainless steel tanks where it is held until it is needed in making Hiland's dairy products. These tanks are called "silos." The silos have outer and inner stainless steel linings. They are cylindrical, and are quite tall, extending from the main level of the dairy floor of the milk receiving room to a point about 10–12 feet above the roof.

Skylights called "sky-domes" had been placed in the roof at intervals so as to provide additional light for the milk receiving room. The skylight's dimensions are $42 \times 44$ inches. The covers of the skylights are made of acrylic and mounted on a frame that extends 8 to 10 inches above the surface of the roof. The acrylic covers of the skylights are not weight bearing. The defendants knew this, as there had been a hail storm several years before the accident in question during which some of the skylights were damaged. In fact, in one instance the hail stones went completely through a skylight. There was a considerable amount of work activity conducted on the roof in question. The roof held a considerable assortment of equipment, such as air conditioners, motors, etc., and

maintenance work was performed on the equipment almost every day. None of the employees whose job duties included working on the roof were aware that the skylights, which were opaque, would not bear their weight. There were no barricades around the skylights, no warning signs, and no safety grids that would have prevented a workman stepping on one of them from falling through it.

Sometime in the spring of 1981, the stainless steel inner liner of one of the silos became damaged. None of the employees of the defendants had the expertise to repair it, so defendants contracted with the Paul Mueller Company, a fabricator of stainless steel products including dairy tanks, to do the job. After examination of the damaged tank, employees of the Paul Mueller Company decided to cut out the damaged portion of the inner liner and replace it with a new piece. Since the tank had both an outside and inside stainless steel shell, it was necessary to cut the top off the outer liner so that when the damaged portion of the inner liner had been cut off, it could be lifted out of the top of the tank and a new piece lowered through the hole and welded into place to complete the repair.

Pyle and Robert Moseley were the two employees of the Paul Mueller Company who were designated to make the repairs. They erected scaffolding inside the tank, which was necessary for them to stand on in order to reach the damaged portion and cut it away. When they finished cutting away the damaged portion of the inner liner, they went to the roof to start cutting through the outer shell of the tank. In order to get to the height where they needed to make the cut, it was necessary that they stand on a ladder. Moseley and Pyle alternated the cutting chore. They would place the ladder against the side of the tank, climb up and make a horizontal cut through the outer shell with a grinder for a distance of about 4 feet, then move the ladder so that they could continue the cut around the cylindrical tank. When the accident occurred, Pyle was cutting. He came down the ladder, and then moved it so he could continue to make his cut. After he did so, the base of the ladder was in close proximity to the skylight. Pyle was standing at the base of the ladder, with his back to the skylight. As he was pulling on the extension cord that led from the grinder to an electric outlet, in order to get a little slack in the cord, he appeared to stumble backward onto the skylight which collapsed under his weight, causing him to fall through to the concrete floor of the milk receiving room which was approximately 19 feet below. The fall killed Pyle.

There was testimony from an expert witness for plaintiffs, who was an architect named Randall Allen, that when skylights are used in roof construction, safety is a factor that should be taken into consideration. He testified that, in his opinion, the skylights on the roof in question were not safe, because they were not designed to hold any load at all, which fact, when coupled with the fact that they were opaque, which made them look stronger than they really were, made them unsuitable for areas where there was considerable human traffic. He also said there was plastic material for skylights available at the time of Pyle's death, strong enough to bear a man's weight, as well as safety grids that could have been placed over the skylights, both of which could be installed at a nominal cost, in a matter of minutes, and which would have prevented the accident.

There is no doubt but that Pyle, as an employee of the Paul Mueller Company, was a business invitee while on the defendants' premises. Defendants, in their brief, concede that plaintiffs' case was submitted under the safe work place doctrine. Such doctrine was codified in the Restatement (Second) of Torts, § 343 (1965). That section reads: A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if he a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and c) fails

to exercise reasonable care to protect them against the danger.[1]

■ It seems to be defendants' position that since the incident where Pyle stumbled and fell backward onto the skylight was not caused by any dangerous or defective condition of the roof, they cannot be liable to plaintiffs as a matter of law. They claim by this that the question is whether the defendants' negligence caused the fall, instead of whether such negligence, if any, caused Pyle's death. This is an incorrect view of the law on the subject. The question is not whether Pyle's *fall* was caused by an unsafe skylight, but is whether his *death* was caused, or directly contributed to be caused, by an unsafe skylight. Plaintiffs' verdict directing instruction No. 7 reads as follows:

> In your verdict you must assess a percentage of fault to defendants Prairie Farms Dairy, Inc. and Mid–America Dairymen, Inc., d/b/a Hiland Dairy Company, whether or not Francis W. Pyle, II was partly at fault, if you believe:
>
> First, plaintiff Deborah Jane Sherwood was the spouse of Francis W. Pyle, II and plaintiffs Francis Pyle, III, Jason Pyle, and Luke Pyle were the children of Francis W. Pyle, II, and
>
> Second, there was a plastic sky dome unable to support an adult male's body weight on the roof of defendants' premises in the area where Francis W. Pyle, II, was working and, as a result, the roof was not reasonably safe for Francis W. Pyle, II, and
>
> Third, defendants knew or by using ordinary care could have known of this condition, and
>
> Fourth, defendants failed to use ordinary care to remove it or barricade it, and
>
> Fifth, such failure directly caused or directly contributed to cause the death of Francis W. Pyle, II.

The instruction is a permissible adaptation of pattern instruction MAI 22.03, which reads:

> Your verdict must be for the plaintiff if you believe:
>
> First, there was (here describe substance on floor which caused the fall) on the floor of defendant's store and as a result the floor was not reasonably safe for customers, and
>
> Second, plaintiff did not know [1] and by using ordinary care could not have known of this condition, and
>
> Third, defendant knew or by using ordinary care [2] could have known of this condition, and
>
> Fourth, defendant failed to use ordinary care [2] to [remove it] [barricade it] [warn of it],[3] and
>
> Fifth, as a direct result of such failure, plaintiff was injured
>
> * [unless you believe plaintiff is not entitled to recover by reason of Instruction Number ___ (here insert number of affirmative defense instruction)].

Notes on Use (1981 Revision)

1. Where plaintiff admits that he saw the object, forgot about it, and later fell on it, the words 'at the time of the occurrence' may be added after 'know' in item 'Second.'

2. The phrase 'ordinary care' must be defined. See definition at MAI 11.05.

3. Select one or more of these phrases. If more than one phrase is used, they must be submitted in the disjunctive and each must be supported by the evidence.

* Add if affirmative defense is submitted.

Note that the approved instruction states that as a direct result of the unsafe condition, the injury occurred.

The test for actionable negligence under Missouri law is set out in *Sirna v. APC Bldg. Corp.*, 730 S.W.2d 561, 564 (Mo.App. 1987), where the following language appears:

> Actionable negligence requires a causal connection between the conduct of the

---

**1.** This doctrine has been modified in Missouri by the cases of *Cox v. J.C. Penney Co., Inc.*, 741 S.W.2d 28 (Mo. banc 1987), and *Hefele v. Na-* *tional Super Markets, Inc.*, 748 S.W.2d 800 (Mo. App.1988), which cases are discussed later in this opinion.

defendant and the resulting injury to the plaintiff. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984). If a causal connection exists, it is said that the negligence charged was the proximate cause of the injury. Proximate cause, and hence, a causal connection, are present if the evidence shows the negligence to have been the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant. *Clary v. United Telephone Co.*, 670 S.W.2d 936, 941 (Mo.App.1984).

From this and other similar cases, it is clear that the law in Missouri is that the question is whether the injury or death was the reasonable and probable consequence of the act or omission of the defendant. Under this test, it was up to the jury to determine whether defendants' conduct in this case was actionable negligence.

There was substantial evidence before the jury that the roof was a "working roof," and that there were workmen on the roof practically every day. Some of the work put them in close proximity to the skylights. Defendants knew these facts. There was substantial evidence that defendants knew the surfaces of the skylights were fragile and not weight bearing, and that the workmen did not know this. Under those circumstances, it was defendants' duty to take reasonable precautions to insure that no one would sit on the skylights, step on them, or fall against them, which duty they did not discharge. *Cox v. American Steam Laundry Co.*, 267 S.W. 77, 80 (Mo.App.1924); *Brody v. Cudahy Packing Co.*, 233 Mo.App. 973, 127 S.W.2d 7, 21 (1939). These facts constituted substantial evidence that a defective and dangerous condition on the roof (the unprotected skylight) was the proximate cause of the death of Pyle, and justified submission of plaintiffs' case to the jury. The point has no merit.

Defendants' next point is that since Pyle's knowledge of conditions that existed on the roof equalled or exceeded the knowledge of defendants, defendants owed no duty to Pyle to warn him of the danger inherent in working close to the skylight, or to protect him from injury through contact with the skylight. In addition to the causation argument which defendants raised in point one of their brief, which contention we have rejected, defendants argue that when Pyle placed his ladder on which he was working close to the skylight, he knew that there was a danger that if he came in contact with the skylight, he might be injured and, therefore, his knowledge of the dangerous condition of the skylight was at least equal to the knowledge of defendants, and that those facts barred recovery to Pyle, citing *Hokanson v. Joplin Rendering Company, Inc.*, 509 S.W.2d 107 (Mo.1974) and *Kelly v. Dairy Queen Enterprises, Inc.*, 581 S.W.2d 903 (Mo.App. 1979) as authority for their position.

*Hokanson* and *Kelly* were both cases in which employees of independent contractors were injured while using ladders to perform repair work at the defendants' places of business. In both cases it was held that because the employee had superior knowledge of a dangerous condition at the base of the ladder on which he was working (in *Hokanson*, a greasy floor—in *Kelly*, snow on the floor) which caused his ladder to slip and him to fall, each worker could not recover. The decision in both cases was based on the premise that if the business invitee had knowledge of the defective condition of the premises that resulted in his injury, but went ahead with his job assignment without taking precautions for his own safety, and was injured by reason of the defective condition of the premises, he could not recover. *Hokanson*, 509 S.W.2d at 111–114; *Kelly*, 581 S.W.2d at 905–906.

Prior to the adoption by Missouri courts of the comparative fault doctrine, *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), the general rule of law as to business invitees was that an occupier of land owed no duty to an invitee to warn him of

open and obvious danger. *Harbourn v. Katz Drug Co.*, 318 S.W.2d 226, 229 (Mo. 1958). In 1987, in *Cox v. J.C. Penney Co., Inc.*, 741 S.W.2d 28 (Mo. banc 1987), our Supreme Court held that their earlier adoption of the comparative fault doctrine in *Gustafson* modified the common law relationship between business inviters and their invitees, stating as follows:

> Under comparative fault, we leave to juries the responsibility to assess the relative fault of the parties in tort actions. Respondent's duty argument fails in this context because it pretermits jury assessment of respondent's fault for failure to maintain the premises in a reasonably safe condition. In this regard, *Gustafson* modifies the common law relationship between business invitors and their invitees.

Id. at 30. Later, the Court of Appeals in *Hefele v. National Super Markets, Inc.*, 748 S.W.2d 800, 802 (Mo.App.1988), in commenting on the opinion of *Cox*, stated:

> The pre-comparative fault bar, based on lack of duty where a plaintiff fails to exercise ordinary care in discerning an obvious danger is a form of contributory negligence and is eliminated under the comparative fault system. Id. Under comparative fault the jury is allowed to assess defendant's fault for failure to maintain the premises in a reasonably safe condition and plaintiff's fault in failing to use ordinary care in discovering an obvious danger. National's first point is denied.

Finally, on March 14, 1989, our Surpeme Court, in keeping with the doctrine of *Cox*, modified MAI 22.03 so as to eliminate the requirement of lack of knowledge on the part of plaintiff as to the defective condition as a prerequisite to his right to recover.

Defendants' reliance on *Hokanson* and *Kelly* as authority for their position on this point is misplaced since the common law doctrine regarding liability in business invitee cases has been changed by reason of the decisions in *Cox* and *Hefele*, and the modification of MAI 22.03. The point has no merit.

■ In their third point relied on, defendants contend the trial court erred in permitting plaintiffs to introduce evidence of subsequent repair of the skylight through which Pyle fell "because there was no issue of feasibility of barricading in this lawsuit, the admission of such evidence injected a false issue into the case which was unduly prejudicial to defendants." The offending evidence was a photograph (plaintiffs' exhibit 5) which portrayed the skylight the day after the accident which showed bars placed across the hole in the roof so that no one could fall through while the skylight was being repaired. While defendants cite a case holding that a photograph depicting subsequent repair may not be introduced for the purpose of having the jury regard the evidence as an admission of a defendant's negligence, *Gignoux v. St. Louis Public Service Co.*, 180 S.W.2d 784, 786 (Mo.App.1944), they do not cite us any case in support of their assertion of error, but merely state that the feasibility of barricading the skylight was not an issue in the case and, therefore, the admission into evidence of the photograph was immaterial and irrelevant to the question of defendants' possible negligence.

In paragraph 16 of plaintiffs' petition, they pleaded, "[t]hat it would have been practical to install a guardrail or interior bracing to prevent an occurrence similar to that which happened." In their answer to that paragraph, defendants stated, "Each separate defendant moves to strike paragraph 16 of plaintiffs' Petition because the allegations contained therein are immaterial and irrelevant to plaintiffs' alleged cause of action. The 'practicality' of installing a guardrail or interior bracing has no bearing on plaintiffs' claims of negligence and, therefore, said allegations are denies [sic]."

When one considers the pleadings, the evidence, and the instructions in this case, it is evident that defendants' contention that failure to barricade was not an issue in the case has no basis in fact. Plaintiffs' verdict directing instruction which we previously referred to contains the requirements that the jury must find that the skylight was not reasonably safe, that de-

fendants knew, or by the exercise of ordinary care could have known, this condition existed, and that they failed to use ordinary care to remove or barricade the skylight, and that such failure directly caused or directly contributed to cause Pyle's death. Liability for failure to barricade presupposes ability to barricade. The photograph was designed to show that the skylight could have been barricaded in such a manner that workmen would not fall through it if they stumbled into it. As such, it was admissible. Even if we assume, arguendo, that the photograph was not admissible, the transcript indicates it was never shown to the jury, and was never referred to again by plaintiffs' trial attorneys after it was offered in evidence. Under those circumstances, the introduction of the photograph in evidence, even if it might be considered erroneous, was harmless error. *Bracken v. Koch,* 404 S.W.2d 201, 206 (Mo.App.1966); *Pender v. Foeste,* 329 S.W.2d 656, 662 (Mo.1959). The point has no merit.

■ In their fourth assignment of error, defendants contend that the trial court erred in giving plaintiffs' verdict directing instruction, which was instruction No. 7 set out earlier in this opinion. In the first subpoint of this assignment of error, plaintiffs claim the second paragraph of the instruction gave the jury a roving commission because it does not state "the specific conditions which were present on defendants' roof that were created by plaintiffs' decedent and were unknown to defendants." The subpoint, as written, does not make sense. If there was a specific dangerous and defective condition in the area where Pyle was working, it was the skylight which had been created by defendants, not by plaintiffs' decedent, and the fact of its dangerous propensities was not unknown to defendants, as stated, but, was unknown to Pyle. In their brief, defendants continue to beat a dead horse by arguing that there was no proof that any specific condition on the roof caused Pyle to fall. As we have previously noted, the question is not whether Pyle's fall into the skylight was caused by an unsafe skylight, but whether the unsafe skylight directly caused or directly contributed to cause Pyle's death.

The instruction specifically states that if the jury believed the skylight was unable to support an adult male's body weight and was in the roof area where Pyle was working, they were entitled to believe that the roof in that area was not reasonably safe for Pyle. Instructional language of similar import has been approved by the Missouri Appellate Courts in cases of *Gipson v. Target Stores, Inc.,* 630 S.W.2d 107, 110 (Mo.App.1981); *Howard v. Lundry,* 591 S.W.2d 193, 198 (Mo.App.1979); *Chrisler v. Holiday Valley, Inc.,* 580 S.W.2d 309, 314 (Mo.App.1979); and, *Blackburn v. Katz Drug Company,* 520 S.W.2d 668, 670 (Mo. App.1975). The instruction in question submitted sufficient ultimate facts upon which a finding of defendants' comparative fault could logically be based.

■ In its second subpoint, defendants urge that the instruction was erroneous because it "failed to set forth the required element of superior knowledge on the part of defendants of a condition created by plaintiffs' decedent on defendants' roof without defendants' knowledge as required by Missouri cases...." As we have previously stated, there is no such requirement by "Missouri cases" and has not been since the adoption by the Missouri Supreme Court of the comparative fault doctrine in business invitee cases such as *Cox v. J.C. Penney Co., Inc.,* 741 S.W.2d 28 (Mo. banc 1987). The instruction is in the form prescribed by MAI 22.03, and, as such, was proper. The point has no merit.

In their next point relied on, defendants assert trial court error in refusing instructions marked "B" and "D" that were tendered by defendants because:

> Said Instructions Correctly Submitted To The Jury The Required Element Of Superior Knowledge Of A Condition On Defendants' Property of Which Defendants Must Have Been Aware Before A Duty To Warn Of Said Condition Arises, The Breach Of Which Is Necessary To Give Rise To Fault Which Must Then Be Compared Under *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983).

The contention ignores the mandate of MAI 22.03, which, under Missouri Supreme Court Rules (Rule 70.02(b)) is the language that must be used in cases of this type, and ignores the holdings of *Cox v. J.C. Penney Co., Inc.,* supra, and later cases interpreting that decision, that superior knowledge on the part of the invitees is no longer an element in comparative fault business invitee cases.

■ In their final point of claimed error, defendants contend:

The Court Erred In Refusing To Give Instruction 'A' Tendered By Defendants, Because It Properly Stated The Degree Of Care That The Law Required Plaintiffs' Decedent To Be Held, i.e. The Care That Would Be Exercised By The Ordinary, Careful And Prudent Skilled And Experienced Workman Working Under Like Or Similar Circumstances.

The instruction offered by defendants would have modified MAI 11.05 by replacing the term "ordinarily careful and prudent person" with "ordinarily careful and prudent skilled and experienced workman." Such a modification was held to be proper in the case of *Honey v. Barnes Hosp.,* 708 S.W.2d 686 (Mo.App.1986). *Honey* was a suit for wrongful death. The facts were that a psychiatric patient of the hospital jumped out a window of the hospital and was killed. The trial court gave an instruction that read:

The term 'negligent' or 'negligence' as used in these instructions with respect to defendant Barnes Hospital means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant Barnes Hospital's profession.

Id. at 691. On appeal, the hospital argued that the instruction imposed a higher standard of care on it than that set out in MAI 11.07, and was, therefore, improper. In disagreeing with this contention, the appellate court held:

Under Instruction No. 6, hospital was not held to a 'higher' standard of care; rather, hospital was held to the standard of care ordinarily exercised by hospitals with specialized knowledge as to the care of psychiatric patients.... M.A.I. 11.07 (Definitions–Negligence and Ordinary Care Combined) is not precisely applicable, because hospital clearly has specialized knowledge with respect to the care and treatment of psychiatric patients.

Id. at 692.

*Honey* is inapplicable on its facts. Pyle was a stainless steel welder, and not a roofer. There was nothing in evidence to show that he had any prior experience working on the roof in question, or on any other roof for that matter. There is nothing in evidence to show Pyle had any prior experience with sky domes or skylights, or that he knew whether they were weight-bearing or not. While defendants claim Pyle had special skills and training, there was absolutely no evidence as to what those skills and training had to do with roofs or skylights. Defendants' contention on this point is unsupported by the evidence. The point has no merit.

Since we find no merit in any of the contentions raised by defendants on appeal, that portion of the trial court's judgment that enters judgment against defendants in the sum of $312,000, which affirmed the jury verdict finding total damage to plaintiffs in the sum of $600,000 and assessing 52 percent of the fault against defendants is affirmed.

■ We turn now to plaintiffs' contention in their appeal. They claim that the trial court erred in giving instruction No. 9, which reads as follows:

In your verdict, you must assess a percentage of fault to Francis W. Pyle, II, whether or not defendants were partly at fault, if you believe:
First, either:
Francis W. Pyle, II, failed to keep a careful lookout, or
Francis W. Pyle, II, placed the ladder that he was using so close to a sky dome that it restricted his movement, or
Francis W. Pyle, II, attempted to cut the top off of the silo at a point higher from the roof deck than was necessary, and
Second, Francis W. Pyle, II, in any one or more of the respects submitted in

Paragraph First, was thereby negligent, and

Third, such negligence of Francis W. Pyle, II, directly caused or directly contributed to cause the death of Francis W. Pyle, II.

The basis of their claim of error is their assertion that the instruction was not supported by evidence, and it was, therefore, erroneous to give it. While it would have been error to give the instruction in question if it lacked evidentiary support, *Kenagy v. Zarda Development Co., Inc.*, 726 S.W.2d 378, 380 (Mo.App.1987), in this case evidentiary support was provided.

There was evidence that Pyle, by his own actions, placed the base of his ladder that he was using to stand on while cutting through the outer shell of the silo at a distance that was not more than two feet from the edge of the skylight. Pyle knew, or should have known, the skylight was there, and knew it was over the milk receiving room, the floor of which was at least 19 feet below the base of the ladder. Pyle knew, or should have known, that if he fell, or jumped backwards off of the ladder, he would land on the skylight. He could see that the skylight did not have any barricade around it, or bars or grids on top of it to keep someone from falling through. Pyle knew, or should have known, that if he and Robert Moseley would cut through the outer shell immediately above the roof surface, there would not be any necessity to use a ladder, and that, as a result, they would be some six to eight feet away from the skylight while cutting through the outer shell. These facts justified submission of the instruction in question. The point has no merit.

The judgment of the trial court is affirmed.

HOLSTEIN, C.J., and FLANIGAN, J., concur.

CROW, C.J., recused.